KLESTADT & WINTERS, LLP
Sean C. Southard
Fred Stevens
Brendan M. Scott
570 Seventh Avenue, 17th Floor
New York, New York 10018
(212) 972-3000

*Proposed Attorneys for Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| MICHAEL MAZZEO ELECTRIC CORPORATION., | Case No. 11-14888 |
| Debtor. | |

| | |
|---|---|
| In re: | Chapter 11 |
| MICHAEL MAZZEO DATACOM INC., | Case No. 11-14889 |
| Debtor. | |

**AFFIDAVIT OF DAVID PARKER**
**PURSUANT TO S.D.N.Y. LOCAL BANKRUPTCY RULES 1007-2**
**AND 9077-1 AND IN SUPPORT OF DEBTORS' FIRST DAY MOTIONS**

STATE OF NEW YORK   )
                                       )   SS:
COUNTY OF NEW YORK  )

David Parker, being duly sworn, says:

1. I am the Chief Executive Officer and President of Michael Mazzeo Electric Corporation ("MMEC") and I am a Director of Michael Mazzeo Datacom, Inc. ("MMD", and together with MMEC, the "Debtors"), the above-captioned debtors and debtors in possession. In accordance with S.D.N.Y. Local Bankruptcy Rules ("L.B.R.") 1007-2 and 9077-1, I submit this affidavit ("Affidavit") in connection with the order for relief under chapter 11 of title 11 of the

United States Code (the "Bankruptcy Code") entered in this case in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), on October 21, 2011 (the "Petition Date"), and in support of the Debtors' first day motions and other pleadings (the "First Day Motions")

2.  I am generally familiar with the business and financial condition of the Debtors. Unless otherwise indicated, all financial information contained herein is presented on an estimated and unaudited basis.

3.  The First Day Motions are intended to enable the Debtors to operate effectively and efficiently within this chapter 11 case, as well as to avoid certain adverse consequences that might otherwise result from the commencement of these cases. Among other things, the First Day Motions are designed to meet the Debtors' goals of: (i) continuing their operations in chapter 11 with as little disruption and loss of productivity as possible; (ii) maintaining the confidence and support of their clients, employees and vendors during the pendency of the Debtors' cases; and (iii) establishing procedures for the smooth and efficient administration of these chapter 11 cases. I have reviewed the First Day Motions, and it is my belief that the relief sought therein is necessary to: (a) avoid immediate and irreparable harm to, and ensure the uninterrupted operation of, the Debtors' businesses, (b) avoid immediate and irreparable harm to the Debtors' clients and numerous other third parties, and (c) maximize and preserve the value of the Debtors' chapter 11 estates.

A.     **Required Contents of Affidavit**

(i) Nature of Debtors' Businesses

(a)     History of MMEC

4.      MMEC was founded in 1977 by Michael Mazzeo, Jr. The company was incorporated in the State of New York in 1980 and over the past 30 years grew to be one of the largest electrical contractors in the metropolitan New York and surrounding areas.

5.      As a long standing contractor with the International Brotherhood of Electrical Workers ("IBEW") and signatory to both IBEW Local Number 3 (NYC) ("Local 3") and 25 (Long Island) ("Local 25"), MMEC's core business is the installation of electrical power, lighting, and low voltage systems for large commercial, institutional and industrial customers.

6.      MMEC's projects range from minor service/maintenance work that can be completed in a matter of hours to complex multi-million dollar projects that span several years. MMEC was Verizon's Disaster Recovery Contractor and, after the September 11, 2001 terrorist attacks, MMEC responded and mobilized a work force of 150 electricians to Verizon's headquarters at 140 West Street in Manhattan. The building, located at "Ground Zero" was severely damaged by the events of September 11th. MMEC successfully repaired the building's electrical services and over the next three years performed approximately $70 million in services at that site. Each year MMEC provides the work associated with the Tribute in Light and September 11 commemoration services.

7.      MMEC's forte is the installation of emergency generators and power distribution systems. MMEC successfully installed hundreds of generators throughout New York City and Long Island for customers including Verizon, Pfizer, Mount Sinai Hospital, Elmhurst Hospital,

Harlem Hospital, Lutheran Medical Center, Verizon Business and Sage Realty.

8. In addition, MMEC has a long history of successfully completing projects for many of the area's largest Hospital/Health Care facilities including Mount Sinai, Memorial Sloan Kettering, Weil Cornell, Beth Israel, NYU Medical and St Luke's – Roosevelt.

9. MMEC also has a division that excels in interior fit-out work. Many large scale projects were performed in this sector over the last few years for customers including Tishman Interiors, Structuretone, Turner Corp, and Skanska. The work included all electrical and low voltage systems for office space, lobbies and common space.

10. MMEC's annual revenues steadily grew from $23 million in 2000 to over $58 million in 2008. At its peak, MMEC employed over two hundred electricians and thirty office personnel.

11. In addition to its own electrical contracting operations, MMEC currently holds ownership interests in five joint ventures, all of which are currently engaged in ongoing construction projects. The following is a brief description of each of the joint ventures in which MMEC holds and interest:

- MD Constructors, LLC - MMEC owns a 50% interest in this joint venture, which currently engaged in two ongoing projects. MMEC is entitled to 50% of the net revenue realized by MD Constructors, LLC. MMEC pledged its ownership interest in MD Constructors, LLC to Signature Bank and also granted to Signature Bank a security interest in all cash collections from MD Constructors, LLC.

- Michael Mazzeo Elec & Aurora Elec AM Electric JV - MMEC owns a 49% interest in this joint venture, which currently is engaged in a single ongoing project at World Trade Center Tower 1.

- Michael Mazzeo Electric Corp & Aurora Electric Inc II Joint Venture AM Electric - MMEC owns a 49% interest in this joint venture, which

>           currently is engaged in three ongoing projects.
>
> - Michael Mazzeo Electric Corp JV/AM Electric WBE - MMEC owns a 50% interest in this joint venture, which currently is engaged in a single ongoing project at the Javits Center in Manhattan.
>
> - Firecom J.V. - MMEC owns a 50% interest in this joint venture, which currently is engaged in a single ongoing project at the World Trade Center.

(b)   Current Status of MMEC

12.   As of October 14, 2011, MMEC employed approximately eighty (80) IBEW union electricians in the field and sixteen (16) office personnel, including management and administrators. During the week of October 17, 2011, the Joint Industry Board advised members of Local 3 that they would not receive health benefits going forward for working on MMEC jobs. This resulted in all members of Local 3 ceasing work on MMEC jobs.

13.   MMEC currently has approximately $20 million in work in progress. Approximately eighty percent (80%) of MMEC's work in progress relates to ongoing projects in the Borough of Manhattan.

(c)   History of MMD

14.   MMD was incorporated in July of 2006 in the State of New York. The company was formed to deliver excellence and expertise to the growing needs of the telecommunications market. James Vinci Sr. was a veteran of over 30 years in the telecom cabling infrastructure industry when he approached 3 of the owners of Michael Mazzeo Electric Corp. to form a new entity. The idea was to form a Tel-Data installation and service company that would take advantage of the opportunities that often go hand in hand with electrical construction. The initial business model assumed that MMD could grow annual revenues to $25 million per year by the

5

third year of operation. The main industry that MMD targeted and serviced was the financial sector, including Barclays Capital, Lehman Brothers, JP Morgan Chase, Deutsche Bank, FINRA and Bear Sterns.

15. Over the past five years, MMD successfully completed many Tel-Data projects for the clients listed above as well as others including a $7,000,000 project for Turner Construction Company (CM) and the NYS Department of Health (Owner) in Queens, NY.

16. As of October 14, 2011, MMD employed approximately ten IBEW electricians and one project manager.

17. MMD is currently providing Tel-Data work on three MMEC projects.

(d) <u>Circumstances Leading To Debtors' Bankruptcy Filing</u>

18. Several external and internal factors have impacted the Debtors, prompting the near-term liquidity pressures that precipitated the decision to seek bankruptcy protection.

19. In 2008, the real estate and financial markets collapsed and credit markets tightened which had a significant negative impact on the entire industry. Overall construction spending in New York City was $23.7 billion in 2010, down nearly twenty-three (23%) percent from its peak in 2007 and 2008. The Debtors were even more affected than the broad market because of their dependence on work from the financial and healthcare sector, which were both hit particularly hard by the recession.

20. MMEC's revenue dropped over forty (40%) percent from over $58 million in the year ending June 30, 2008, to under $34 million in the year ending June 30, 2009. Many projects were slowed down, put on hold or cancelled. Generally speaking, the projects that were put up for bid became extremely competitive, requiring MMEC to reduce margins in order to compete.

While MMEC saw a slight uptick in revenue during fiscal year 2010 to approximately $36 million (unaudited), it experienced another dip in revenue during fiscal year 2011 to under $30 million. MMEC has continued to reduce its workforce and overhead but has experienced great difficulty in attempting to stay competitive in the marketplace while at the same time effectively servicing its debt.

21. In light of this backdrop, the Debtors have struggled to balance the simultaneous demands of servicing their secured debt along with their unsecured obligations. During the last week, the Debtors' inability to stay current on its obligations with employee benefits resulted in IBEW Local 3 directing their members to cease work on the Debtors' jobs. The loss of their workforce in the field, combined with their inability to obtain additional operating capital from their secured lender has left the Debtors with no choice but to seek the protections afforded by the Bankruptcy Code so that they may reorganize their affairs while continuing to operate.

(e) <u>Debtors' Postpetition Goals</u>

22. The Debtors believe that through chapter 11, they can restructure their businesses into leaner, more efficient operations that can return to profitability. During the pendency of their chapter 11 cases, the Debtors intend to continue projects currently under contract, with the goal of confirming plans of reorganization that will maximize the return to the Debtors' creditors.

23. The Debtors believe that the chapter 11 process affords a better opportunity to provide a greater return to its creditors than any alternative wind down or liquidation process.

(ii) <u>Debtor's Case Was Not Originally Commenced Under Chapter 7 or Chapter 13</u>

24. The Debtors cases were voluntarily commenced under chapter 11 and were not

7

originally commenced under chapter 7 or chapter 13.

(iii) <u>Prepetition Creditors' Committee</u>

25. To the best of the Debtors' knowledge, no prepetition creditors' committees were formed prior to the Petition Date.

(iv) <u>Twenty Largest Unsecured Creditors</u>

26. A consolidated list setting forth the Debtors' twenty (20) largest unsecured creditors, excluding those persons who constitute "insiders" under Bankruptcy Code section 101(31), are annexed hereto as **Exhibit A**. As required by L.B.R. 1007-2(a)(4), **Exhibit A** includes the creditors' names, addresses, telephone numbers (for persons familiar with the account, if available), amount of each claim, and an indication of whether the claims are contingent, unliquidated, disputed, or partially secured.

(v) <u>Five Largest Secured Creditors</u>

27. As required by L.B.R. 1007-2(a)(5), **Exhibit B** includes a list of MMEC's largest secured creditors, including the creditors' names, addresses, telephone numbers (for persons familiar with the account, if available), amount of each claim, a brief description and an estimate of the value of the collateral securing the claim, and whether the claim or lien is disputed.

28. As required by L.B.R. 1007-2(a)(5), **Exhibit C** includes a list of MMD's largest secured creditors, including the creditors' names, addresses, telephone numbers (for persons familiar with the account, if available), amount of each claim, a brief description and an estimate of the value of the collateral securing the claim, and whether the claim or lien is disputed.

(vi) Assets and Liabilites

29. As required by L.B.R. 1007-2(a)(6), a summary of MMEC's and MMD's assets and liabilities is attached as **Exhibit D** and **Exhibit E**, respectively.

(vii) Publicly Held Stock

30. As required by L.B.R. 1007-2(a)(7), no classes of shares of stock, debentures, or other securities of the debtor are publicly held. MMEC's outstanding stock is owned as follows: (i) Michael Mazzeo - 65%; (ii) David Parker - 25%; (iii) Michael Joyce - 5%; and (iv) Russ Flaum - 5%. Michael Mazzeo, Michael Joyce, David Parker and James Vinci, Sr., each hold 25% of the MMD's outstanding stock.

(viii) Debtor Property Held By Others

31. Other than as set forth herein, the Debtors have no property in possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agent for any such entity. Accordingly, L.B.R. 1007-2(a)(8) is inapplicable.

(ix) Debtor's Office Space

32. As required by L.B.R. 1007-2(a)(9); MMEC leases its primary office space located at 41-24 24th Street, Long Island City, NY 11101 from Chriker Realty, LLC. MMEC also leases additional space located at 41-18 24th Street, Long Island City, New York 11101 from Greene and Kamen.

(x) Location of Debtor's Assets and Books and Records

33. Pursuant to L.B.R. 1007-2(a)(10), the majority of the Debtors' books and records are maintained at their offices located at 41-24 24th Street, Long Island City, NY 11101. Substantially all of the Debtors' physical assets are located on the leased premises located at 41-

24 24th Street, Long Island City, NY 11101 and 41-18 24th Street, Long Island City, New York 11101.

    (xi)    <u>Threatened or Pending Actions Against the Debtor</u>

34.    Pursuant to L.B.R. 1007-2(a)(11), a list of pending or threatened actions is included in the Statement of Financial Affairs which are being filed contemporaneously herewith.

    (xii)    <u>The Debtor's Senior Management</u>

35.    Pursuant to L.B.R. 1007-2(a)(12), MMEC's senior management consists of:

    (a)    Michael Mazzeo, Chairman of the Board of Directors

    (b)    David Parker, President and Chief Executive Officer

    (c)    Michael Joyce, Chief Operating Officer, Secretary and Treasurer

    (d)    Russ Flaum, Senior Vice President.

36.    MMD's senior management consists of:

    (a)    Michael Mazzeo, Chief Executive Officer

    (b)    David Parker, Director

    (c)    Michael Joyce, Chief Operating Officer

    (d)    James Vinci Sr., President

**B.**    **<u>Additional Information Required by L.B.R. 1007-2(b)</u>**

37.    In accordance with L.B.R. 1007-2(b), the Debtors intend to continue the operation of their businesses and the management of their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

38.    In accordance with L.B.R. 1007-2(b)(1), the estimated amount of the weekly

payroll to employees (exclusive of officers, directors, stockholders and partners) for the thirty (30) day period following the Petition Date is:

   (a)  MMEC -  approximately $438,000

   (b)  MMD -  approximately $30,000

39.  In accordance with L.B.R. 1007-2(b)(2), the amounts paid and proposed to be paid for the thirty (30) day period following the Petition Date for services rendered by the Debtor's officers and directors is:

   (a)  MMEC -  approximately $62,000.

   (b)  MMD –  $0.

40.  The Debtor has not engaged a financial or business consultant, therefore L.B.R. 1007-2(b)(2)(C) is not applicable.

41.  In accordance with L.B.R. 1007-2(b)(3), a schedule of estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue but remain unpaid for MMEC and MMD is annexed hereto as **Exhibit F** and **Exhibit G**, respectively.

C.  **<u>Conclusion</u>**

42. The Debtors reserve the right to amend or supplement any of the attached schedules in the event additional information is obtained by the Debtors.

43. The Debtors believe that the protection of the Bankruptcy Court will enable them to maximize the value of their assets for the benefit of their estates and their creditors.

                                                                                           /s/ David Parker
                                                                                             David Parker

Sworn to and subscribed before me this
21st day of October, 2011

/s/ Joseph C. Corneau
Notary Public