

# PROMISSORY NOTE

$4,000,000.00                                                As of : August 2, 2010

On November 1, 2010 (the "Maturity Date"), for value received, Michael Mazzeo Electric Corporation, having its principal office at 41-24 24th Street, Long Island City, New York 11101 (the "Borrower"), promises to pay to the order of SIGNATURE BANK, having an office at 565 Fifth Avenue, New York, NY 10017 (the "Bank"), at such office of the Bank or at such other place as the holder hereof may from time to time appoint in writing, in lawful money of the United States of America in immediately available funds, the principal sum of Four Million AND 00/100 ($4,000,000.00) Dollars or such lesser amount as may then be the aggregate unpaid principal balance of all loans made by the Bank to the Borrower hereunder (each a "Loan" and collectively the "Loans") as shown on the schedule attached to and made a part of this Note. The Borrower also promises to pay interest (computed on the basis of a 360 day year for actual days elapsed) at said office in like money on the unpaid principal amount of each Loan from time to time outstanding at a rate per annum equal to the Prime Rate plus 2%. Interest on each Loan shall be payable monthly on the first day of each month commencing the first such day to occur after a Loan is made hereunder and, together with principal, on the maturity thereof. The Borrower further agrees that upon and following an Event of Default and/or after any stated or any accelerated maturity of Loans hereunder, all Loans shall bear interest (computed daily) at a rate equal to 4% per annum in excess of the rate then applicable to such Loans, payable on demand. Furthermore, if the entire amount of any principal and/or interest required to be paid pursuant to this Note is not paid in full within ten (10) days after the same is due, the Borrower shall further pay to the Bank a late fee equal to Five percent (5%) of the required payment. In no event shall interest payable hereunder be in excess of the maximum rate of interest permitted under applicable law. If any payment to be so made hereunder becomes due and payable on a day other than a Business Day, such payment shall be extended to the next succeeding Business Day and, to the extent permitted by applicable law, interest thereon shall be payable at the then applicable rate during such extension.

All payments made in connection with this Note shall be in lawful money of the United States in immediately available funds. All such payments shall be applied first to the payment of all fees, expenses and other amounts due to the Bank (excluding principal and interest), then to accrued interest, and the balance on account of outstanding principal; provided, however, that after the occurrence of an Event of Default, payments will be applied to the obligations of the Borrower to the Bank as the Bank determines in its sole discretion. The Borrower hereby expressly authorizes the Bank to record on the attached schedule the amount and date of each Loan, the rate of interest thereon, Interest Period thereof and the date and amount of each payment of principal. All such notations shall be presumptive as to the correctness thereof; provided, however, the failure of the Bank to make any such notation shall not limit or otherwise affect the obligations of the Borrower under this Note.

In consideration of the granting of the Loans evidenced by this Note, the Borrower hereby agrees as follows:


600001
0101

1. <u>Loan Requests</u>. Requests for Loans may be made up until 1 p.m. on the date the Loan is to be made. Any request for a Loan must be written. The Bank shall have no obligation to make any Loan hereunder.

2. <u>Prepayment</u>. The Borrower may prepay any Loan at any time in whole or in part without premium or penalty. Each such prepayment shall be made together with interest accrued thereon to and including the date of prepayment.

3. <u>Warranties and Representations</u>.

☐ For Individuals    ☑ For Institutions

The Borrower represents and warrants that: a) it is duly organized, validly existing and in good standing under the laws of the state of its organization and is qualified to do business and is in good standing under the laws of every state where its failure to so qualify would have a material and adverse effect on the business, operations, property or other condition of the Borrower; b) the execution, issuance and delivery of this Note by the Borrower are within its organizational powers and have been duly authorized, and the Note is valid, binding and enforceable in accordance with its terms, and is not in violation of law or of the terms of the Borrower's organizational documents and does not result in the breach of or constitute a default under any indenture, agreement or undertaking to which the Borrower is a party or by which it or its property may be bound or affected; c) no authorization or approval or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the due execution, delivery and performance by the Borrower of this Note, except those as have been obtained; d) the financial statements of the Borrower heretofore furnished to the Bank are complete and correct and fairly represent the financial condition of the Borrower and its subsidiaries as at the dates thereof and for the periods covered thereby, which financial condition has not materially, adversely, changed since the date of the most recently dated balance sheet heretofore furnished to the Bank; e) no Event of Default (as hereinafter defined) has occurred and no event has occurred which with the giving of notice or the lapse of time or both would constitute an Event of Default; f) the Borrower shall not use any part of the proceeds of any Loan to purchase or carry any margin stock within the meaning of Regulation U of the Board of Governors of the Federal Reserve System or to extend credit to others for the purpose of purchasing or carrying any margin stock; g) there is no pending or, to the knowledge of the Borrower, threatened action or proceeding affecting the Borrower before any court, governmental agency or arbitrator which, if determined adversely to the Borrower would have a materially adverse effect on the financial condition or operations of the Borrower except as described in the financial statements of the Borrower heretofore furnished to the Bank; and h) on the occasion of the granting of each Loan all representations and warranties contained herein shall be true and correct and with the same force and effect as though such representations and warranties had been made on and as of the date of the making of each such Loan.

4. <u>Events of Default</u>. Upon the occurrence of any of the following specified events of default (each an "Event of Default"): a) default in making any payment of principal, interest, or any other sum payable under this Note when due; or b) default by



the Borrower or any Guarantor (i) of any other obligation hereunder or (ii) in the due payment of any other obligation owing to the Bank or (iii) under any other document, instrument and/or agreement with or in favor of the Bank; or c) default by Borrower or any Guarantor in the due payment of any other indebtedness for borrowed money or default in the observance or performance of any covenant or condition contained in any agreement or instrument evidencing, securing, or relating to any such indebtedness, which causes or permits the acceleration of the maturity thereof; or d) any representation or warranty made by the Borrower herein or in any certificate furnished by the Borrower in connection with the Loans evidenced hereby or pursuant to the provisions hereof, proves untrue in any material respect; or e) the Borrower or any Guarantor becomes insolvent or bankrupt, is generally not paying its debts as they become due, or makes an assignment for the benefit of creditors, or a trustee or receiver is appointed for the Borrower or any Guarantor or for the greater part of the properties of the Borrower or any Guarantor with the consent of the Borrower or such Guarantor, or if appointed without the consent of the Borrower or such Guarantor, such trustee or receiver is not discharged within 30 days, or bankruptcy, reorganization, liquidation or similar proceedings are instituted by or against the Borrower or any Guarantor under the laws of any jurisdiction, and if instituted against the Borrower or any Guarantor are consented to by it or remain undismissed for 30 days, or a writ or warrant of attachment or similar process shall be issued against a substantial part of the property of the Borrower or any Guarantor and shall not be released or bonded within 30 days after levy; or f) the mortgage or pledge of, creation of a security interest in, any assets of the Borrower, other than security interests in favor of the Bank; or g) the incurrence by the Borrower of any indebtedness for borrowed money, other than obligations owing to the Bank; h) the Bank shall have determined, in its sole discretion, that one or more conditions exist or events have occurred which have resulted or may result in a material adverse change in the business, properties or financial condition of the Borrower or any Guarantor as determined in the sole discretion of the Bank or one or more other conditions exist or events have occurred with respect to the Borrower or any Guarantor which the Bank deems materially adverse; then, in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Bank may declare the principal and the accrued interest in respect of all Loans under this Note to be, whereupon the Note shall become, immediately due and payable without presentment, demand, protest or other notice of any kind, all of which are expressly waived by the Borrower.

5. <u>Collateral Security</u>. As collateral security for the payment of this Note and of all other notes and/or obligations or Liabilities (as hereinafter defined) of the Borrower, now of hereafter owned or held by the Bank, the Borrower grants the Bank a security interest in, pledges and assigns to the Bank all monies and/or other property now or hereafter held by the Bank (and/or any entity controlling, controlled by or under common control with the Bank, each such entity referred to herein as an "Affiliate") on deposit, in safekeeping, or otherwise, for the account of or to the credit of or belonging to the Borrower or in which the Borrower shall have any interest, all of which is hereinafter termed the collateral security. At any time, without demand or notice, the Bank may set off all deposits, credits, collateral and property, now or hereafter in the possession, custody, safekeeping or control of the Bank or any Affiliate, or in transit to any of them, or any part thereof and apply the same to any of the Liabilities even though unmatured and regardless of the adequacy of any other collateral securing the Liabilities. ANY AND ALL RIGHTS TO REQUIRE THE BANK TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES



THE LIABILITIES, PRIOR TO EXERCISING ITS RIGHT OF SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS OR OTHER PROPERTY OF THE BORROWER OR ANY GUARANTOR OR OTHER PARTY OBLIGATED ON THIS NOTE, ARE HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED. The Bank at any time, before or after an Event or Default (as herein defined), may but shall not be obligated to, transfer into or out of its own name or that of its nominee all or any of the collateral security, including stocks, bonds, and other securities, and the Bank or its nominee may demand, sue for, collect, receive and hold as like collateral security any or all interest, dividends and income thereon and if the securities are held in the name of the Bank or its nominee, the Bank may, after an Event of Default, exercise all voting and other rights pertaining thereto as if the Bank were the absolute owner thereof; but the Bank shall not be obligated to demand payment of, protest, or take any steps necessary to preserve any rights in the collateral against prior parties, or to take any action whatsoever in regard to the collateral security or any part thereof, all of which the Borrower assumes and agrees to do. Without limiting the generality of the foregoing, the Bank shall not be obligated to take any action in connection with any conversion, call, redemption, retirement or any other event relating to any of the collateral security, unless the Borrower gives written notice to the Bank that such action shall be taken not more than thirty (30) days prior to the time such action may first be taken and not less than ten (10) days prior to the expiration of the time during which such action may be taken. The term "Liabilities" shall include this Note and all other indebtedness and obligations and liabilities of any kind of the Borrower to the Bank, now or hereafter existing, arising directly between the Borrower and the Bank or acquired by assignment, conditionally or as collateral security by the Bank, absolute or contingent, joint and/or several, secure or unsecured, due or not due, contractual or tortious, liquidated or unliquidated, arising by operation of law or otherwise, direct or indirect, including, but without limiting the generality of the foregoing, indebtedness, obligations or liabilities to the Bank of the Borrower as a member of any partnership, syndicate, association or other group, and whether incurred by the Borrower as principal, surety, endorser, guarantor, accommodation party or otherwise. This Note and all of the aforementioned obligations and Liabilities are also secured by (a) any and all property of the Borrower and/or any Guarantor and/or any other party obligated on this Note, now or hereafter subject to a security agreement, mortgage, pledge agreement, assignment, hypothecation or other document granting the Bank or an Affiliate a security interest or other lien or encumbrance and (b) any and all collateral described in any and all credit accommodations, notes, loan agreements, and any other agreements and documents, now or hereafter existing, creating, evidencing, guaranteeing, securing or relating to any or all of the Liabilities, together with all amendments, modifications, renewals, or extensions thereof.

      6.  <u>Definitions</u>.  As used herein:

      (a) "Business Day" means a day other than a Saturday, Sunday or other day on which commercial banks in New York are required or permitted by law to remain closed.

      (b) "Guarantor" and "Guarantors" mean <u>Chriker Realty LLC, Michael Mazzeo and David J. Parker,</u> and any other party guaranteeing payment or otherwise obligated on this Note.



(c) "Loan Documents" means each document, instrument or agreement executed pursuant hereto or in connection herewith, together with each other document, instrument or agreement made with or in favor of the Bank.

(d) "Prime Rate" means the variable per annum rate of interest so designated from time to time by the Bank as its prime rate. The Prime Rate is a reference rate and does not necessarily represent the lowest or best rate being charged to any customer.

7. Miscellaneous.

(a) The Borrower agrees to pay on demand all of the Bank's costs and expenses, including reasonable counsel fees, in connection with collection of any sums due to the Bank and enforcement of its rights under this Note.

(b) No modification or waiver of any provision of this Note shall be effective unless such modification or waiver shall be in writing and signed by a duly authorized officer of the Bank, and the same shall then be effective only for the period and on the conditions and for the specific instances specified in such writing. No failure or delay by the Bank in exercising any right, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any rights, power or privilege.

(c) The Borrower hereby waives presentment, demand for payment, notice of protest, notice of dishonor, and any and all other notices or demands except as otherwise expressly provided for herein.

(d) This Note shall be construed in accordance with and governed by the laws of the State of New York (excluding the laws applicable to conflicts or choice of law). The Borrower agrees that any suit for the enforcement of this Note or any of the other Loan Documents may be brought in the courts of the State of New York or any Federal court sitting therein and consents to the nonexclusive jurisdiction of such court and service of process in any such suit being made upon the Borrower by mail at the address set forth in the first paragraph of this Note. The Borrower hereby waives any objection that it may now or hereafter have to the venue of any such suit or any such court or that such suit is brought in an inconvenient forum.

(e) The Bank may at any time pledge all or any portion of its rights under this Note and the loan documents executed in connection therewith (the "Loan Documents") to any of the twelve (12) Federal Reserve Banks organized under Section 4 of the Federal Reserve Act, 12 U.S.C. Section 341. No such pledge or enforcement thereof shall release the Bank from its obligations under any of such loan documents.

(f) EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT



SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 7(f).

(g)     The Bank shall have the unrestricted right at any time and from time to time, and without the consent of or notice to the Borrower or any other party obligated on this Note, to grant to one or more banks or other financial institutions (each, a "Participant") participating interests in the Bank's obligation to lend hereunder and/or any or all of the Loans held by the Bank hereunder.  In the event of any such grant by the Bank of a participating interest to a Participant, whether or not upon notice to the Borrower, the Bank shall remain responsible for the performance of its obligations hereunder and the Borrower shall continue to deal solely and directly with the Bank in connection with the Bank's rights and obligations hereunder.  The Bank may furnish any information concerning the Borrower in its possession from time to time to prospective assignees and Participants, provided that the Bank shall require any such prospective assignee or Participant to agree in writing to maintain the confidentiality of such information.

(h)     This Note shall be binding upon and inure to the benefit of the Borrower, the Bank, all future holders of this Note and their respective successors and assigns, except that the Borrower may not assign or transfer any of its rights under this Note without the prior written consent of the Bank.  The term "Bank" as used herein shall be deemed to include the Bank and its successors, endorsees and assigns.  The Bank shall have the unrestricted right at any time or from time to time, and without the Borrower's consent, to assign all or any portion of its rights and obligations hereunder to one or more banks or other financial institutions (each, an "Assignee"), and the Borrower agrees that it shall execute, or cause to be executed, such documents, including without limitation, amendments to this Note and to any other documents, instruments and agreements executed in connection herewith as the Bank shall deem necessary to effect the foregoing.  In addition, at the request of the Bank and any such Assignee, the Borrower shall issue one or more new promissory notes, as applicable, to any such Assignee and, if the Bank has retained any of its rights and obligations hereunder following such assignment, to the Bank, which new promissory notes shall be issued in replacement of, but not in discharge of, the liability evidenced by the promissory note held by the Bank prior to such assignment and shall reflect the amount of Loans held by such Assignee and the Bank after giving effect to such assignment.  Upon the execution and delivery of appropriate assignment documentation, amendments and any other documentation required by the Bank in connection with such assignment, and the payment by Assignee of the purchase price agreed to by the Bank, and such Assignee, such Assignee shall be a party to this Agreement and shall have all of the rights and obligations of the Bank hereunder (and under any and all other guaranties, documents, instruments and agreements executed in connection herewith) to the extent that such rights and obligations have been assigned by the Bank pursuant to the assignment documentation between the Bank and such Assignee, and the Bank shall be released from its obligations hereunder and thereunder to a corresponding extent.

(i)     This Note and the other Loan Documents are intended by the parties as the final, complete and exclusive statement of the transactions evidenced



thereby. All prior or contemporaneous promises, agreements and understandings, whether oral or written, are deemed to be superceded by this Note and such other Loan Documents, and no party is relying on any promise, agreement or understanding not set forth in this Note or such other Loan Documents. Neither this Note nor any of such other Loan Documents may be amended or modified except by a written instrument describing such amendment or modification executed by the Borrower and the Bank.

(j)     This Note shall replace and supersede the Promissory Note made by the Borrower to the order of the Bank dated May 3, 2010 (the "Prior Note"); provided, however, that the execution and delivery of this Note shall not in any circumstances be deemed to have terminated, extinguished or discharged the Borrower's indebtedness under such Prior Note, all of which indebtedness shall continue under and be governed by the Note and the documents, instruments and agreements executed pursuant hereto or in connection herewith. This Note is a replacement, consolidation, amendment and restatement of the Prior Note and IS NOT A NOVATION. The Borrower shall also pay and this Note shall also evidence any and all unpaid interest on the Loan made by the Bank to the Borrower pursuant to Prior Note, and at the interest rate specified therein, for which this note has been issued as replacement therefore.

Michael Mazzeo Electric Corporation

By: _____
    Name: Michael Mazzeo
    Title: C.E.O./Chairman of the Board

600001
0101

# LOAN AND REPAYMENT SCHEDULE
## PROMISSORY NOTE DATED August 2, 2010
### to SIGNATURE BANK

| Date | Amount of Loan | Amount of Principal Repayment | Unpaid Principal Balance | Notation Made By |
|------|----------------|-------------------------------|--------------------------|------------------|
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |



600001

As of: August 2, 2010

SIGNATURE BANK
565 Fifth Avenue
New York, New York 10017

Gentlemen:

Michael Mazzeo Electric Corporation (the "Borrower") is presently indebted to SIGNATURE BANK (the "Bank"), pursuant to a line of credit facility and various notes (collectively, the "Loans"). The Loans are payable to the Bank as provided in the agreements, documents and instruments executed pursuant to or in connection with the Loans (collectively the "Loan Documents"). As of the date hereof, the Bank is renewing a $4,000,000.00 Line of Credit facility to the Borrower (the "New Transactions") and in connection therewith a number of new documents are being executed and certain of the Loan Documents are being amended and restated. All of the documents, instruments and agreements executed in connection with the New Transactions, together with all of the loan documents executed in connection with any prior credit facility(ies) provided by the Bank to the Borrower (unless such prior documents have been expressly terminated) shall be referred to herein as the "New Documents."

Pursuant to guarantees previously executed (the "Guarantees"), Chriker Realty LLC (collectively, the "Guarantors") jointly and severally guarantees all of the liabilities and obligations of the Borrower to the Bank, including without limitation the Loans, as amended, modified, replaced, and/or supplemented by the New Documents.

It is expressly agreed that the obligations of the Guarantors under the Guarantees shall not be limited, reduced or in any way impaired by the extension of the Loans and other amendments, modifications, supplements and/or replacements thereto pursuant to the New Documents. Each of the Guarantors hereby (i) consents to the terms of the Loans as amended or otherwise set forth in the New Documents; (ii) reaffirms their continuing liability under their respective Guarantees without offset, defense or counterclaim; (iii) reaffirms that they remain jointly and severally liable to the Bank for all Liabilities (as defined in their respective Guarantees) and (iv) confirms that they have been provided and have reviewed the New Documents.

Each of the undersigned has indicated their agreement to the foregoing by their signature below.

AGREED AND ACCEPTED
This 2<u>nd</u> day of <u>August,</u> <u>2010:</u>

<u>Chriker Realty LLC</u>

By: X _____

Name: Michael Mazzeo

Title:   Member

As of: August 2, 2010

SIGNATURE BANK
565 Fifth Avenue
New York, New York 10017

Gentlemen:

Michael Mazzeo Electric Corporation (the "Borrower") is presently indebted to SIGNATURE BANK (the "Bank"), pursuant to a line of credit facility and various notes (collectively, the "Loans"). The Loans are payable to the Bank as provided in the agreements, documents and instruments executed pursuant to or in connection with the Loans (collectively the "Loan Documents"). As of the date hereof, the Bank is renewing a $4,000,000.00 Line of Credit facility to the Borrower (the "New Transactions") and in connection therewith a number of new documents are being executed and certain of the Loan Documents are being amended and restated. All of the documents, instruments and agreements executed in connection with the New Transactions, together with all of the loan documents executed in connection with any prior credit facility(ies) provided by the Bank to the Borrower (unless such prior documents have been expressly terminated) shall be referred to herein as the "New Documents."

Pursuant to guarantees previously executed (the "Guarantees"), Michael Mazzeo Datacom, Inc. (collectively, the "Guarantors") jointly and severally guarantees all of the liabilities and obligations of the Borrower to the Bank, including without limitation the Loans, as amended, modified, replaced, and/or supplemented by the New Documents.

It is expressly agreed that the obligations of the Guarantors under the Guarantees shall not be limited, reduced or in any way impaired by the extension of the Loans and other amendments, modifications, supplements and/or replacements thereto pursuant to the New Documents. Each of the Guarantors hereby (i) consents to the terms of the Loans as amended or otherwise set forth in the New Documents; (ii) reaffirms their continuing liability under their respective Guarantees without offset, defense or counterclaim; (iii) reaffirms that they remain jointly and severally liable to the Bank for all Liabilities (as defined in their respective Guarantees) and (iv) confirms that they have been provided and have reviewed the New Documents.

Each of the undersigned has indicated their agreement to the foregoing by their signature below.

AGREED AND ACCEPTED
This 2<u>nd</u> day of <u>August, 2010</u>:

<u>Michael Mazzeo Datacom, Inc.</u>

By: _____

Name: Michael Mazzeo
Title:   Chairman of the Board & CEO

As of: August 2, 2010

SIGNATURE BANK
565 Fifth Avenue
New York, New York 10017
Gentlemen:

Michael Mazzeo Electric Corporation (the "Borrower") is presently indebted to SIGNATURE BANK (the "Bank"), pursuant to a line of credit facility and various notes (collectively, the "Loans"). The Loans are payable to the Bank as provided in the agreements, documents and instruments executed pursuant to or in connection with the Loans (collectively the "Loan Documents"). As of the date hereof, the Bank is renewing a $4,000,000.00 Line of Credit facility to the Borrower (the "New Transactions") and in connection therewith a number of new documents are being executed and certain of the Loan Documents are being amended and restated. All of the documents, instruments and agreements executed in connection with the New Transactions, together with all of the loan documents executed in connection with any prior credit facility(ies) provided by the Bank to the Borrower (unless such prior documents have been expressly terminated) shall be referred to herein as the "New Documents."

Pursuant to guarantees previously executed (the "Guarantees"), Michael Mazzeo (collectively, the "Guarantors") jointly and severally guarantees all of the liabilities and obligations of the Borrower to the Bank, including without limitation the Loans, as amended, modified, replaced, and/or supplemented by the New Documents.

It is expressly agreed that the obligations of the Guarantors under the Guarantees shall not be limited, reduced or in any way impaired by the extension of the Loans and other amendments, modifications, supplements and/or replacements thereto pursuant to the New Documents. Each of the Guarantors hereby (i) consents to the terms of the Loans as amended or otherwise set forth in the New Documents; (ii) reaffirms their continuing liability under their respective Guarantees without offset, defense or counterclaim; (iii) reaffirms that they remain jointly and severally liable to the Bank for all Liabilities (as defined in their respective Guarantees) and (iv) confirms that they have been provided and have reviewed the New Documents.

Each of the undersigned has indicated their agreement to the foregoing by their signature below.
AGREED AND ACCEPTED
this 2nd day of August, 2010:

Michael Mazzeo, Individually



As of: August 2, 2010

SIGNATURE BANK
565 Fifth Avenue
New York, New York 10017
Gentlemen:

Michael Mazzeo Electric Corporation (the "Borrower") is presently indebted to SIGNATURE BANK (the "Bank"), pursuant to a line of credit facility and various notes (collectively, the "Loans"). The Loans are payable to the Bank as provided in the agreements, documents and instruments executed pursuant to or in connection with the Loans (collectively the "Loan Documents"). As of the date hereof, the Bank is renewing a $4,000,000.00 Line of Credit facility to the Borrower (the "New Transactions") and in connection therewith a number of new documents are being executed and certain of the Loan Documents are being amended and restated. All of the documents, instruments and agreements executed in connection with the New Transactions, together with all of the loan documents executed in connection with any prior credit facility(ies) provided by the Bank to the Borrower (unless such prior documents have been expressly terminated) shall be referred to herein as the "New Documents."

Pursuant to guarantees previously executed (the "Guarantees"), David J. Parker (collectively, the "Guarantors") jointly and severally guarantees all of the liabilities and obligations of the Borrower to the Bank, including without limitation the Loans, as amended, modified, replaced, and/or supplemented by the New Documents.

It is expressly agreed that the obligations of the Guarantors under the Guarantees shall not be limited, reduced or in any way impaired by the extension of the Loans and other amendments, modifications, supplements and/or replacements thereto pursuant to the New Documents. Each of the Guarantors hereby (i) consents to the terms of the Loans as amended or otherwise set forth in the New Documents; (ii) reaffirms their continuing liability under their respective Guarantees without offset, defense or counterclaim; (iii) reaffirms that they remain jointly and severally liable to the Bank for all Liabilities (as defined in their respective Guarantees) and (iv) confirms that they have been provided and have reviewed the New Documents.

Each of the undersigned has indicated their agreement to the foregoing by their signature below.
AGREED AND ACCEPTED
this 2nd day of August, 2010:

X _____
David J. Parker, Individually



## PROMISSORY NOTE

$4,000,000.00                                            As of : March 2, 2009

On March 2, 2010 (the "Maturity Date"), for value received, Michael Mazzeo Electric Corporation, having its principal office at 41-24 24th Street, Long Island City, New York 11101 (the "Borrower"), promises to pay to the order of SIGNATURE BANK, having an office at 565 Fifth Avenue, New York, NY 10017 (the "Bank"), at such office of the Bank or at such other place as the holder hereof may from time to time appoint in writing, in lawful money of the United States of America in immediately available funds, the principal sum of Four Million AND 00/100 ($4,000,000.00) Dollars or such lesser amount as may then be the aggregate unpaid principal balance of all loans made by the Bank to the Borrower hereunder (each a "Loan" and collectively the "Loans") as shown on the schedule attached to and made a part of this Note.  The Borrower also promises to pay interest (computed on the basis of a 360 day year for actual days elapsed) at said office in like money on the unpaid principal amount of each Loan from time to time outstanding at a rate per annum equal to the Prime Rate plus 0%. Interest on each Loan shall be payable monthly on the first day of each month commencing the first such day to occur after a Loan is made hereunder and, together with principal, on the maturity thereof.  The Borrower further agrees that upon and following an Event of Default and/or after any stated or any accelerated maturity of Loans hereunder, all Loans shall bear interest (computed daily) at a rate equal to 4% per annum in excess of the rate then applicable to such Loans, payable on demand.  Furthermore, if the entire amount of any principal and/or interest required to be paid pursuant to this Note is not paid in full within ten (10) days after the same is due, the Borrower shall further pay to the Bank a late fee equal to Five percent (5%) of the required payment.  In no event shall interest payable hereunder be in excess of the maximum rate of interest permitted under applicable law. If any payment to be so made hereunder becomes due and payable on a day other than a Business Day, such payment shall be extended to the next succeeding Business Day and, to the extent permitted by applicable law, interest thereon shall be payable at the then applicable rate during such extension.

All payments made in connection with this Note shall be in lawful money of the United States in immediately available funds. All such payments shall be applied first to the payment of all fees, expenses and other amounts due to the Bank (excluding principal and interest), then to accrued interest, and the balance on account of outstanding principal; provided, however, that after the occurrence of an Event of Default, payments will be applied to the obligations of the Borrower to the Bank as the Bank determines in its sole discretion. The Borrower hereby expressly authorizes the Bank to record on the attached schedule the amount and date of each Loan, the rate of interest thereon, Interest Period thereof and the date and amount of each payment of principal. All such notations shall be presumptive as to the correctness thereof; provided, however, the failure of the Bank to make any such notation shall not limit or otherwise affect the obligations of the Borrower under this Note.

In consideration of the granting of the Loans evidenced by this Note, the Borrower hereby agrees as follows:


600001

1. <u>Loan Requests</u>. Requests for Loans may be made up until 1 p.m. on the date the Loan is to be made. Any request for a Loan must be written. The Bank shall have no obligation to make any Loan hereunder.

2. <u>Prepayment</u>. The Borrower may prepay any Loan at any time in whole or in part without premium or penalty. Each such prepayment shall be made together with interest accrued thereon to and including the date of prepayment.

3. <u>Warranties and Representations</u>.

☐ For Individuals    ☑ For Institutions

The Borrower represents and warrants that: a) it is duly organized, validly existing and in good standing under the laws of the state of its organization and is qualified to do business and is in good standing under the laws of every state where its failure to so qualify would have a material and adverse effect on the business, operations, property or other condition of the Borrower; b) the execution, issuance and delivery of this Note by the Borrower are within its organizational powers and have been duly authorized, and the Note is valid, binding and enforceable in accordance with its terms, and is not in violation of law or of the terms of the Borrower's organizational documents and does not result in the breach of or constitute a default under any indenture, agreement or undertaking to which the Borrower is a party or by which it or its property may be bound or affected; c) no authorization or approval or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the due execution, delivery and performance by the Borrower of this Note, except those as have been obtained; d) the financial statements of the Borrower heretofore furnished to the Bank are complete and correct and fairly represent the financial condition of the Borrower and its subsidiaries as at the dates thereof and for the periods covered thereby, which financial condition has not materially, adversely, changed since the date of the most recently dated balance sheet heretofore furnished to the Bank; e) no Event of Default (as hereinafter defined) has occurred and no event has occurred which with the giving of notice or the lapse of time or both would constitute an Event of Default; f) the Borrower shall not use any part of the proceeds of any Loan to purchase or carry any margin stock within the meaning of Regulation U of the Board of Governors of the Federal Reserve System or to extend credit to others for the purpose of purchasing or carrying any margin stock; g) there is no pending or, to the knowledge of the Borrower, threatened action or proceeding affecting the Borrower before any court, governmental agency or arbitrator which, if determined adversely to the Borrower would have a materially adverse effect on the financial condition or operations of the Borrower except as described in the financial statements of the Borrower heretofore furnished to the Bank; and h) on the occasion of the granting of each Loan all representations and warranties contained herein shall be true and correct and with the same force and effect as though such representations and warranties had been made on and as of the date of the making of each such Loan.

4. <u>Events of Default</u>. Upon the occurrence of any of the following specified events of default (each an "Event of Default"): a) default in making any payment of principal, interest, or any other sum payable under this Note when due; or b) default by


600001

the Borrower or any Guarantor (i) of any other obligation hereunder or (ii) in the due payment of any other obligation owing to the Bank or (iii) under any other document, instrument and/or agreement with or in favor of the Bank; or c) default by Borrower or any Guarantor in the due payment of any other indebtedness for borrowed money or default in the observance or performance of any covenant or condition contained in any agreement or instrument evidencing, securing, or relating to any such indebtedness, which causes or permits the acceleration of the maturity thereof; or d) any representation or warranty made by the Borrower herein or in any certificate furnished by the Borrower in connection with the Loans evidenced hereby or pursuant to the provisions hereof, proves untrue in any material respect; or e) the Borrower or any Guarantor becomes insolvent or bankrupt, is generally not paying its debts as they become due, or makes an assignment for the benefit of creditors, or a trustee or receiver is appointed for the Borrower or any Guarantor or for the greater part of the properties of the Borrower or any Guarantor with the consent of the Borrower or such Guarantor, or if appointed without the consent of the Borrower or such Guarantor, such trustee or receiver is not discharged within 30 days, or bankruptcy, reorganization, liquidation or similar proceedings are instituted by or against the Borrower or any Guarantor under the laws of any jurisdiction, and if instituted against the Borrower or any Guarantor are consented to by it or remain undismissed for 30 days, or a writ or warrant of attachment or similar process shall be issued against a substantial part of the property of the Borrower or any Guarantor and shall not be released or bonded within 30 days after levy; or f) the mortgage or pledge of, creation of a security interest in, any assets of the Borrower, other than security interests in favor of the Bank; or g) the incurrence by the Borrower of any indebtedness for borrowed money, other than obligations owing to the Bank; h) the Bank shall have determined, in its sole discretion, that one or more conditions exist or events have occurred which have resulted or may result in a material adverse change in the business, properties or financial condition of the Borrower or any Guarantor as determined in the sole discretion of the Bank or one or more other conditions exist or events have occurred with respect to the Borrower or any Guarantor which the Bank deems materially adverse; then, in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Bank may declare the principal and the accrued interest in respect of all Loans under this Note to be, whereupon the Note shall become, immediately due and payable without presentment, demand, protest or other notice of any kind, all of which are expressly waived by the Borrower.

5. Collateral Security. As collateral security for the payment of this Note and of all other notes and/or obligations or Liabilities (as hereinafter defined) of the Borrower, now of hereafter owned or held by the Bank, the Borrower grants the Bank a security interest in, pledges and assigns to the Bank all monies and/or other property now or hereafter held by the Bank (and/or any entity controlling, controlled by or under common control with the Bank, each such entity referred to herein as an "Affiliate") on deposit, in safekeeping, or otherwise, for the account of or to the credit of or belonging to the Borrower or in which the Borrower shall have any interest, all of which is hereinafter termed the collateral security. At any time, without demand or notice, the Bank may set off all deposits, credits, collateral and property, now or hereafter in the possession, custody, safekeeping or control of the Bank or any Affiliate, or in transit to any of them, or any part thereof and apply the same to any of the Liabilities even though unmatured and regardless of the adequacy of any other collateral securing the Liabilities. ANY AND ALL RIGHTS TO REQUIRE THE BANK TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES


600001

THE LIABILITIES, PRIOR TO EXERCISING ITS RIGHT OF SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS OR OTHER PROPERTY OF THE BORROWER OR ANY GUARANTOR OR OTHER PARTY OBLIGATED ON THIS NOTE, ARE HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED. The Bank at any time, before or after an Event or Default (as herein defined), may but shall not be obligated to, transfer into or out of its own name or that of its nominee all or any of the collateral security, including stocks, bonds, and other securities, and the Bank or its nominee may demand, sue for, collect, receive and hold as like collateral security any or all interest, dividends and income thereon and if the securities are held in the name of the Bank or its nominee, the Bank may, after an Event of Default, exercise all voting and other rights pertaining thereto as if the Bank were the absolute owner thereof; but the Bank shall not be obligated to demand payment of, protest, or take any steps necessary to preserve any rights in the collateral against prior parties, or to take any action whatsoever in regard to the collateral security or any part thereof, all of which the Borrower assumes and agrees to do. Without limiting the generality of the foregoing, the Bank shall not be obligated to take any action in connection with any conversion, call, redemption, retirement or any other event relating to any of the collateral security, unless the Borrower gives written notice to the Bank that such action shall be taken not more than thirty (30) days prior to the time such action may first be taken and not less than ten (10) days prior to the expiration of the time during which such action may be taken. The term "Liabilities" shall include this Note and all other indebtedness and obligations and liabilities of any kind of the Borrower to the Bank, now or hereafter existing, arising directly between the Borrower and the Bank or acquired by assignment, conditionally or as collateral security by the Bank, absolute or contingent, joint and/or several, secure or unsecured, due or not due, contractual or tortious, liquidated or unliquidated, arising by operation of law or otherwise, direct or indirect, including, but without limiting the generality of the foregoing, indebtedness, obligations or liabilities to the Bank of the Borrower as a member of any partnership, syndicate, association or other group, and whether incurred by the Borrower as principal, surety, endorser, guarantor, accommodation party or otherwise. This Note and all of the aforementioned obligations and Liabilities are also secured by (a) any and all property of the Borrower and/or any Guarantor and/or any other party obligated on this Note, now or hereafter subject to a security agreement, mortgage, pledge agreement, assignment, hypothecation or other document granting the Bank or an Affiliate a security interest or other lien or encumbrance and (b) any and all collateral described in any and all credit accommodations, notes, loan agreements, and any other agreements and documents, now or hereafter existing, creating, evidencing, guaranteeing, securing or relating to any or all of the Liabilities, together with all amendments, modifications, renewals, or extensions thereof.

     6.  <u>Definitions</u>. As used herein:

     (a) "Business Day" means a day other than a Saturday, Sunday or other day on which commercial banks in New York are required or permitted by law to remain closed.

     (b) "Guarantor" and "Guarantors" mean <u>Chriker Realty LLC, Michael Mazzeo and David J. Parker,</u> and any other party guaranteeing payment or otherwise obligated on this Note.



(c)  "Loan Documents" means each document, instrument or agreement executed pursuant hereto or in connection herewith, together with each other document, instrument or agreement made with or in favor of the Bank.

(d)  "Prime Rate" means the variable per annum rate of interest so designated from time to time by the Bank as its prime rate. The Prime Rate is a reference rate and does not necessarily represent the lowest or best rate being charged to any customer.

7.  Miscellaneous.

(a)  The Borrower agrees to pay on demand all of the Bank's costs and expenses, including reasonable counsel fees, in connection with collection of any sums due to the Bank and enforcement of its rights under this Note.

(b)  No modification or waiver of any provision of this Note shall be effective unless such modification or waiver shall be in writing and signed by a duly authorized officer of the Bank, and the same shall then be effective only for the period and on the conditions and for the specific instances specified in such writing. No failure or delay by the Bank in exercising any right, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any rights, power or privilege.

(c)  The Borrower hereby waives presentment, demand for payment, notice of protest, notice of dishonor, and any and all other notices or demands except as otherwise expressly provided for herein.

(d)  This Note shall be construed in accordance with and governed by the laws of the State of New York (excluding the laws applicable to conflicts or choice of law). The Borrower agrees that any suit for the enforcement of this Note or any of the other Loan Documents may be brought in the courts of the State of New York or any Federal court sitting therein and consents to the nonexclusive jurisdiction of such court and service of process in any such suit being made upon the Borrower by mail at the address set forth in the first paragraph of this Note. The Borrower hereby waives any objection that it may now or hereafter have to the venue of any such suit or any such court or that such suit is brought in an inconvenient forum.

(e)  The Bank may at any time pledge all or any portion of its rights under this Note and the loan documents executed in connection therewith (the "Loan Documents") to any of the twelve (12) Federal Reserve Banks organized under Section 4 of the Federal Reserve Act, 12 U.S.C. Section 341. No such pledge or enforcement thereof shall release the Bank from its obligations under any of such loan documents.

(f)  EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT



SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 7(f).

(g)     The Bank shall have the unrestricted right at any time and from time to time, and without the consent of or notice to the Borrower or any other party obligated on this Note, to grant to one or more banks or other financial institutions (each, a "Participant") participating interests in the Bank's obligation to lend hereunder and/or any or all of the Loans held by the Bank hereunder. In the event of any such grant by the Bank of a participating interest to a Participant, whether or not upon notice to the Borrower, the Bank shall remain responsible for the performance of its obligations hereunder and the Borrower shall continue to deal solely and directly with the Bank in connection with the Bank's rights and obligations hereunder. The Bank may furnish any information concerning the Borrower in its possession from time to time to prospective assignees and Participants, provided that the Bank shall require any such prospective assignee or Participant to agree in writing to maintain the confidentiality of such information.

(h)     This Note shall be binding upon and inure to the benefit of the Borrower, the Bank, all future holders of this Note and their respective successors and assigns, except that the Borrower may not assign or transfer any of its rights under this Note without the prior written consent of the Bank. The term "Bank" as used herein shall be deemed to include the Bank and its successors, endorsees and assigns. The Bank shall have the unrestricted right at any time or from time to time, and without the Borrower's consent, to assign all or any portion of its rights and obligations hereunder to one or more banks or other financial institutions (each, an "Assignee"), and the Borrower agrees that it shall execute, or cause to be executed, such documents, including without limitation, amendments to this Note and to any other documents, instruments and agreements executed in connection herewith as the Bank shall deem necessary to effect the foregoing. In addition, at the request of the Bank and any such Assignee, the Borrower shall issue one or more new promissory notes, as applicable, to any such Assignee and, if the Bank has retained any of its rights and obligations hereunder following such assignment, to the Bank, which new promissory notes shall be issued in replacement of, but not in discharge of, the liability evidenced by the promissory note held by the Bank prior to such assignment and shall reflect the amount of Loans held by such Assignee and the Bank after giving effect to such assignment. Upon the execution and delivery of appropriate assignment documentation, amendments and any other documentation required by the Bank in connection with such assignment, and the payment by Assignee of the purchase price agreed to by the Bank, and such Assignee, such Assignee shall be a party to this Agreement and shall have all of the rights and obligations of the Bank hereunder (and under any and all other guaranties, documents, instruments and agreements executed in connection herewith) to the extent that such rights and obligations have been assigned by the Bank pursuant to the assignment documentation between the Bank and such Assignee, and the Bank shall be released from its obligations hereunder and thereunder to a corresponding extent.

(i)     This Note and the other Loan Documents are intended by the parties as the final, complete and exclusive statement of the transactions evidenced



thereby. All prior or contemporaneous promises, agreements and understandings, whether oral or written, are deemed to be superceded by this Note and such other Loan Documents, and no party is relying on any promise, agreement or understanding not set forth in this Note or such other Loan Documents. Neither this Note nor any of such other Loan Documents may be amended or modified except by a written instrument describing such amendment or modification executed by the Borrower and the Bank.

(j)     This Note shall replace and supersede the Promissory Note made by the Borrower to the order of the Bank dated <u>December 29, 2008 </u>(the "Prior Note"); provided, however, that the execution and delivery of this Note shall not in any circumstances be deemed to have terminated, extinguished or discharged the Borrower's indebtedness under such Prior Note, all of which indebtedness shall continue under and be governed by the Note and the documents, instruments and agreements executed pursuant hereto or in connection herewith. This Note is a replacement, consolidation, amendment and restatement of the Prior Note and IS NOT A NOVATION. The Borrower shall also pay and this Note shall also evidence any and all unpaid interest on the Loan made by the Bank to the Borrower pursuant to Prior Note, and at the interest rate specified therein, for which this note has been issued as replacement therefore.

Michael Mazzeo Electric Corporation

By: _____
      Name: Michael Mazzeo
      Title: C.E.O./Chairman of the Board

600001

## LOAN AND REPAYMENT SCHEDULE
## PROMISSORY NOTE DATED <u>March 2, 2009</u>
## to SIGNATURE BANK

| Date | Amount of Loan | Amount of Principal Repayment | Unpaid Principal Balance | Notation Made By |
|------|----------------|-------------------------------|--------------------------|------------------|
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |
|      |                |                               |                          |                  |


600001





# TERM NOTE

$2,312,500.00                                                    March 2, 2009

   **FOR VALUE RECEIVED**, Michael Mazzeo Electric Corp., with an office at 41-
24 24th Street, Long Island City, New york 11101, (the "Borrower") promises to pay to the
order of **SIGNATURE BANK,** (the "Bank") at the principal office of the Bank located at
565 Fifth Avenue, 12th Floor, New York, New York 10017, or at any of its other banking
offices in New York as Bank may designate in writing the sum of **Two Million Three
Hundred Twelve Thousand, Five Hundred AND 00/100 ($2,312,500.00) DOLLARS,**
which, as now exists or may hereafter be reduced, is referred to below as the "Loan", in
immediately available funds and in lawful money of the United States of America, together
with interest, as hereinafter provided for, as follows:

   (a) in Thirty-seven (37) successive monthly principal installments, the first
36 of which shall each be in the amount of $62,500.00 and the 37th and final such
principal installment shall be in the amount of $62,500.00 (or such other sum as
shall be required to satisfy in full the indebtedness evidenced hereby), each such
payment payable on the first day of each month in each year commencing April 1,
2009 until the entire principal balance and all accrued and unpaid interest shall have
been paid in full; and

   (b) interest, (computed on the basis of a 360 day year for actual days
elapsed) at said office in like money on the unpaid principal amount of the Loan
from time to time outstanding at a rate per annum from the date hereof until
maturity, equal to a fixed rate per annum equal to 5.50% (hereinafter called a
"Fixed Rate Loan"). Interest on this Note shall be payable monthly on the first
day of each month commencing the first such day to occur after a Loan is made
hereunder and, together with principal, on the maturity thereof. The Borrower
further agrees that upon and following an Event of Default and/or after any stated
or any accelerated maturity of this Note hereunder, this Note shall bear interest
(computed daily) at a rate equal to 4% per annum in excess of the rate then
applicable to the Loan, payable on demand. Furthermore, if the entire amount of
any principal and/or interest required to be paid pursuant to this Note is not paid
in full within ten (10) days after the same is due, the Borrower shall further pay to
the Bank a late fee equal to Five percent (5%) of the required payment. In no
event shall interest payable hereunder be in excess of the maximum rate of
interest permitted under applicable law. If any payment to be so made hereunder



becomes due and payable on a day other than a Business Day, such payment shall be extended to the next succeeding Business Day and, to the extent permitted by applicable law, interest thereon shall be payable at the then applicable rate during such extension.

All payments made in connection with this Note shall be in lawful money of the United States in immediately available funds. All such payments shall be applied first to the payment of all fees, expenses and other amounts due to the Bank (excluding principal and interest), then to accrued interest, and the balance on account of outstanding principal; provided, however, that after the occurrence of an Event of Default, payments will be applied to the obligations of the Borrower to the Bank as the Bank determines in its sole discretion.

In consideration of the granting of the Loan evidenced by this Note, the Borrower hereby agrees as follows:

1. <u>Prepayment</u>. The Borrower may prepay a Fixed Rate Loan if the Bank, in its sole discretion, determines that current market conditions can accommodate a prepayment request, and only upon at least ten (10) Business Days prior written notice to the Bank (which notice shall be irrevocable). Any such prepayment shall occur only on the last day of the Interest Period for such Fixed Rate Loan. The Borrower shall pay to the Bank, immediately upon request of the Bank, such amount as shall be sufficient (in the reasonable opinion of the Bank) to compensate it for any loss, cost, or expense incurred as a result of: (i) any payment of a Fixed Rate Loan, whether as a result of acceleration or otherwise, on a date other than the last day of the Interest Period for such Loan; (ii) the conversion prior to the last day of an applicable Interest Period of a Fixed Rate Loan into a Prime Rate Loan; (iii) any failure by the Borrower to borrow a Fixed Rate Loan on the date specified by Borrower's written notice; (iv) any failure by the Borrower to pay a Fixed Rate Loan on the date for payment specified in the Borrower's written notice. Without limiting the foregoing, the Borrower shall pay to the Bank a "yield maintenance fee" in an amount computed as follows: The current rate for United States Treasury securities (bills on a discounted basis shall be converted to a bond equivalent) with a maturity date closest to the term chosen pursuant to the Fixed Rate Election as to which the prepayment is made, shall be subtracted from the Fixed Rate Loan in effect at the time of prepayment. If the result is zero or a negative number, there shall be no yield maintenance fee. If the result is a positive number, then the resulting percentage shall be multiplied by the amount of the principal balance being prepaid. The resulting amount shall be divided by 360 and multiplied by the number of days remaining in the term chosen pursuant to the Fixed Rate Election as to which the prepayment is made. Said amount shall be reduced to present value calculated by using the above referenced United States Treasury securities rate and the number of days remaining in the term chosen pursuant to the Fixed Rate Election as to which prepayment is made. The resulting amount shall be the yield maintenance fee due to the Bank upon the payment of a Fixed Rate Loan. Each reference in this paragraph to "Fixed Rate Election" shall mean the election by Borrower of the Fixed Rate Loan. If by reason of an Event of Default, the



Bank elects to declare the Note to be immediately due and payable, then any yield maintenance fee with respect to a Fixed Rate Loan shall become due and payable in the same manner as though the Borrower had exercised such right of prepayment.

2.  Warranties and Representations.  The Borrower represents and warrants that: a) it is duly organized, validly existing and in good standing under the laws of the state of its organization and is qualified to do business and is in good standing under the laws of every state where its failure to so qualify would have a material and adverse effect on the business, operations, property or other condition of the Borrower; b) the execution, issuance and delivery of this Note by the Borrower are within its organizational powers and have been duly authorized, and the Note is valid, binding and enforceable in accordance with its terms, and is not in violation of law or of the terms of the Borrower's organizational documents and does not result in the breach of or constitute a default under any indenture, agreement or undertaking to which the Borrower is a party or by which it or its property may be bound or affected; c) no authorization or approval or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the due execution, delivery and performance by the Borrower of this Note, except those as have been obtained; d) the financial statements of the Borrower heretofore furnished to the Bank are complete and correct and fairly represent the financial condition of the Borrower and its subsidiaries as at the dates thereof and for the periods covered thereby, which financial condition has not materially, adversely, changed since the date of the most recently dated balance sheet heretofore furnished to the Bank; e) no Event of Default (as hereinafter defined) has occurred and no event has occurred which with the giving of notice or the lapse of time or both would constitute an Event of Default; f) the Borrower shall not use any part of the proceeds of the Loan to purchase or carry any margin stock within the meaning of Regulation U of the Board of Governors of the Federal Reserve System or to extend credit to others for the purpose of purchasing or carrying any margin stock; and g) there is no pending or, to the knowledge of the Borrower, threatened action or proceeding affecting the Borrower before any court, governmental agency or arbitrator which, if determined adversely to the Borrower would have a materially adverse effect on the financial condition or operations of the Borrower except as described in the financial statements of the Borrower heretofore furnished to the Bank.

3.  Affirmative Covenants.  The Borrower hereby agrees that, so long as this Note remains outstanding and unpaid, or any other amount is owing to the Bank hereunder, the Borrower will:

(a) Take the necessary steps to preserve its existence and its right to conduct business in all states in which the nature of its business requires qualification to do business. In the event of dispute between the Borrower and the Bank as to when qualification is necessary, the decision of the Bank shall control.



(b) Keep its books of account in accordance with good accounting practices and furnish to the Bank:

(i)   within 120 days after the last day of each of its fiscal years, the consolidated and consolidating balance sheets of the Borrower and its Subsidiaries (and to the extent not furnished therewith, like consolidated and consolidating statements of each Guarantor and its Subsidiaries) as at such last day of the fiscal year and statements of income and retained earnings and cash flows for such fiscal year each prepared in accordance with GAAP consistently applied and certified without qualification by a firm of independent certified public accountants satisfactory to the Bank without qualification;

(ii)   within 90 days after the close of each semi-annual period of each fiscal year, consolidated and consolidating balance sheets, statements of income and retained earnings and cash flows of the Borrower and its Subsidiaries (and to the extent not furnished therewith, like consolidated and consolidating statements of each Guarantor and its Subsidiaries) as of the last day of and for such 6 months and for the period of the fiscal year ended as of the close of the particular semi-annual period, all such quarterly statements to be in reasonable detail, and certified by the chief financial or accounting officer / representative of the Borrower as having been prepared in accordance with GAAP (subject to year-end adjustments);

(iii)   annually and within 20 days of when filed, the annual tax return of each individual Guarantor filed with the Internal Revenue Service, and an annual personal financial statement of each individual guarantor to be received within 30 days of statement date.;]and

(iv)such other data as may be reasonably requested by the Bank.

(c) Within 30 days of any officer of the Borrower obtaining knowledge of any Event of Default, if such Event of Default is then continuing, furnish to the Bank a certificate of the chief financial or accounting officer / representative of the Borrower setting forth the details thereof and the action which the Borrower is taking or proposes to take with respect thereto.

(d) Maintain insurance with responsible and reputable insurance companies or associations in such amounts and covering such risks as is usually carried by companies engaged in similar businesses and owning similar properties in the same general areas in which the Borrower operates and naming the Bank as an additional insured and loss payee thereon as its interest may appear.

(e) Maintain and preserve all of its properties which are used or which are useful in the conduct of its business in good working order and condition, ordinary wear and tear excepted and comply with all requirements of applicable laws.



(f) Duly pay and discharge all taxes or other claims which might become a lien upon any of its property except to the extent that any thereof are being in good faith appropriately contested with adequate reserves provided therefor.

(g) Promptly notify the Bank in writing of any litigation, legal proceeding or dispute, other than disputes in the ordinary course of business or, whether or not in the ordinary course of business, involving amounts in excess of $100,000.00 Dollars, affecting the Borrower or any Subsidiary whether or not fully covered by insurance, and regardless of the subject matter thereof (excluding, however, any actions relating to workers' compensation claims or negligence claims relating to use of motor vehicles, if fully covered by insurance, subject to deductibles).

(h) At all times and from time to time permit the Bank by or through any of its officers, agents, employees, attorneys or accountants to inspect and make extracts from the Borrower's books and records.

(i) At all times maintain Subordinated Debt in an amount not less than $657,436.00.

4. <u>Financial Covenants</u>. The Borrower hereby agrees that, so long as this Note remains outstanding and unpaid, or any other amount is owing to the Bank hereunder, the Borrower will:

(a) Maintain, as at the last day of each fiscal year, Tangible Net Worth plus Subordinated Debt in an amount not less than that designated opposite each such period:

| Period | | |
|---|---|---|
| **From** | **Through** | **Minimum Effective Net Worth of** |
| Date hereof - | 6/30/07 | $1.500.000 |
| 7/1/07 | 6/30/08 | $1,750,000 |
| 7/1/08 | 6/30/09 | $2,000,000 |
| 7/1/09 | 6/30/10 | $2,500,000 |
| 7/1/10 | and thereafter | $3,000,000 |



(b) Maintain, as at the last day of each fiscal year, a Debt Service Coverage Ratio of not less than 1.20 to 1.0.

(c) Maintain, at the last day of each fiscal year, Working Capital in an amount not less than $1,000,000.00.

5. <u>Negative Covenants</u>. The Borrower hereby agrees that, so long as this Note remains outstanding and unpaid, or any other amount is owing to the Bank hereunder, the Borrower will not:

(a)Incur, or permit to exist, any indebtedness for borrowed money except (x) indebtedness incurred pursuant to borrowings hereunder and under any other loans made by the Bank in its discretion to the Borrower or any Subsidiary, (y) indebtedness existing on the date hereof and reflected in the financial statements referred to in this Note and (z) purchase money indebtedness incurred in the acquisition of fixed assets within the limitations of Section 5 (i) hereof.

(b)Incur, or permit to exist, a net loss at any time.

(c)Enter into any merger or consolidation or liquidate, windup or dissolve itself or sell, transfer or lease or otherwise dispose of all or any substantial part of its assets (other than sales of inventory and obsolescent equipment in the ordinary course of business) or acquire by purchase or otherwise the business or assets of, or stock of, another business entity; except that any subsidiary may merge into or consolidate with any other subsidiary which is wholly-owned by the Borrower and any subsidiary which is wholly-owned by the Borrower may merge with or consolidate into the Borrower provided that the Borrower is the surviving entity.

(d)Lend or advance money, credit or property to or invest in (by capital contribution, loan, purchase or otherwise) any firm, corporation, or other Person except (x) investments in United States Government obligations, certificates of deposit of any banking institution with combined capital and surplus of at least $200,000,000 and (y) accounts receivable arising out of sales of inventory in the ordinary course of business.

(e)Create, assume or permit to exist, any Lien on any of its property or assets now owned or hereafter acquired except (A) Liens in favor of the Bank; (B) other Liens incidental to the conduct of its business or the ownership of its property and assets which were not incurred in connection with the borrowing of money or the obtaining of advances or credit and which do not materially impair the use thereof in the operation of its business; (C) Liens for taxes or other governmental charges which are not delinquent or which are being contested in good faith and for which a reserve shall have been established in accordance with generally accepted accounting principles; and (D) purchase money Liens


600003

granted to secure the unpaid purchase price of any fixed assets purchased within the limitations of Section 5 (i) hereof.

(f)Assume, endorse, be or become liable for or guarantee the obligations of any other party or person excluding however, the endorsement of negotiable instruments for deposit or collection in the ordinary course of business.

(g)Declare or pay any dividends on its capital stock (other than dividends payable solely in shares of its own common stock) or purchase, redeem, retire or otherwise acquire any of its capital stock at any time outstanding, except any subsidiary wholly owned by the Borrower may declare and pay dividends to the Borrower.

(h)Sell, discount or otherwise dispose of notes, accounts receivable or other obligations owing to the Borrower, with or without recourse, except for the purpose of collection in the ordinary course of business; or sell any asset pursuant to an arrangement to thereafter lease such asset from the purchaser thereof.

(i)Expend in the aggregate for the Borrower and all Subsidiaries in excess of $250,000.00 in any fiscal year for the acquisition of fixed assets including payments made on account of capitalized leases, but excluding any such capitalized expenditures financed by the Bank. For purposes of the foregoing, such expenditures shall include payments made on account of any deferred purchase price or on account of any indebtedness incurred to finance any such purchase price.

(j)Expend in the aggregate for the Borrower and all Subsidiaries in excess of $250,000.00 in any fiscal year for the lease or rental of equipment pursuant to any rental agreement therefor, whether an operating lease, capitalized lease or otherwise.

(k)Materially alter the nature of its business.

(l)Sell or otherwise dispose of any Subsidiary (except in connection with a merger or consolidation of a Subsidiary into the Borrower or another Subsidiary) or permit a Subsidiary to issue any additional shares of its capital stock except pro rata to its stockholders.

(m)Make, or permit any Subsidiary to make any change in their accounting treatment or financial reporting practices except as required or permitted by GAAP in effect from time to time.



(n)Except as otherwise specifically set forth in this Agreement, directly or indirectly purchase, acquire or lease any property from, or sell, transfer or lease any property to, or enter into any other transaction, with any Affiliate except in the ordinary course of business and at prices and on terms not less favorable to it than those which would have been obtained in an arm's-length transaction with a nonaffiliated third party.

6. Events of Default. Upon the occurrence of any of the following specified events of default (each an "Event of Default"):

(a)Default in making any payment of principal, interest, or any other sum payable under this Note when due; or

(b)Default by the Borrower or any Guarantor under any other Loan Document; or default by Borrower or any Guarantor of (i) any other obligation hereunder or (ii) in the due payment of any other obligation owing to the Bank or (iii) under any other document, instrument and/or agreement with or in favor of the Bank or in the due payment of any other indebtedness for borrowed money or (iv) in the observance or performance of any covenant or condition contained in any agreement or instrument evidencing, securing, or relating to any such obligation or indebtedness, which causes or permits the acceleration of the maturity thereof; or

(c)The failure of the Borrower or any Guarantor to observe or perform any term, covenant or agreement contained in this Note; or

(d)Any representation or warranty made by the Borrower or any Guarantor herein or in any certificate furnished by the Borrower or any Guarantor in connection with the Loan evidenced hereby or pursuant to the provisions hereof, proves untrue in any material respect; or

(e)The Borrower or any Guarantor becomes insolvent or bankrupt, is generally not paying its debts as they become due, or makes an assignment for the benefit of creditors, or a trustee or receiver is appointed for the Borrower or any Guarantor or for the greater part of the properties of the Borrower or any Guarantor with the consent of the Borrower or any such Guarantor, or if appointed without the consent of the Borrower or any such Guarantor, such trustee or receiver is not discharged within 30 days, or bankruptcy, reorganization, liquidation or similar proceedings are instituted by or against the Borrower or any Guarantor under the laws of any jurisdiction, and if instituted against the Borrower or any such Guarantor are consented to by it or remain undismissed for 30 days, or a writ or warrant of attachment or similar process shall be issued against a substantial part of the property of the Borrower or any Guarantor and shall not be released or bonded within 30 days after levy; or



600003
0101

(f) The Bank shall have determined, in its sole discretion, that one or more conditions exist or events have occurred which have resulted, or may result, in a material adverse change in the business, properties or financial condition of the Borrower;

then, in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Bank may declare the principal and the accrued interest in respect of the Loan under this Note to be, whereupon the Note shall become, immediately due and payable without presentment, demand, protest or other notice of any kind, all of which are expressly waived by the Borrower and the Bank may exercise any or all remedies available to it under the Loan Documents and/or under applicable law.

7.  Collateral Security.  As collateral security for the payment of this Note and of all other notes and/or obligations or Liabilities (as hereinafter defined) of the Borrower, now or hereafter owned or held by the Bank, the Borrower grants the Bank a security interest in, pledges and assigns to the Bank all monies and/or other property now or hereafter held by the Bank (and/or any entity controlling, controlled by or under common control with the Bank, each such entity referred to herein as an "Affiliate") on deposit, in safekeeping, or otherwise, for the account of or to the credit of or belonging to the Borrower or in which the Borrower shall have any interest, all of which is hereinafter termed the collateral security. At any time, without demand or notice, the Bank may set off all deposits, credits, collateral and property, now or hereafter in the possession, custody, safekeeping or control of the Bank or any Affiliate, or in transit to any of them, or any part thereof and apply the same to any of the Liabilities even though unmatured and regardless of the adequacy of any other collateral securing the Liabilities.  ANY AND ALL RIGHTS TO REQUIRE THE BANK TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES THE LIABILITIES, PRIOR TO EXERCISING ITS RIGHT OF SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS OR OTHER PROPERTY OF THE BORROWER OR ANY GUARANTOR OR OTHER PARTY OBLIGATED ON THIS NOTE, ARE HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED. The Bank at any time, before or after an Event or Default (as herein defined), may but shall not be obligated to, transfer into or out of its own name or that of its nominee all or any of the collateral security, including stocks, bonds, and other securities, and the Bank or its nominee may demand, sue for, collect, receive and hold as like collateral security any or all interest, dividends and income thereon and if the securities are held in the name of the Bank or its nominee, the Bank may, after an Event of Default, exercise all voting and other rights pertaining thereto as if the Bank were the absolute owner thereof; but the Bank shall not be obligated to demand payment of, protest, or take any steps necessary to preserve any rights in the collateral against prior parties, or to take any action whatsoever in regard to the collateral security or any part thereof, all of which the Borrower assumes and agrees to do.  Without limiting the generality of the foregoing, the Bank shall not be obligated to take any action in connection with any conversion, call,


600003

redemption, retirement or any other event relating to any of the collateral security, unless the Borrower gives written notice to the Bank that such action shall be taken not more than thirty (30) days prior to the time such action may first be taken and not less than ten (10) days prior to the expiration of the time during which such action may be taken. The term "Liabilities" shall include this Note and all other indebtedness and obligations and liabilities of any kind of the Borrower to the Bank, now or hereafter existing, arising directly between the Borrower and the Bank or acquired by assignment, conditionally or as collateral security by the Bank, absolute or contingent, joint and/or several, secure or unsecured, due or not due, contractual or tortious, liquidated or unliquidated, arising by operation of law or otherwise, direct or indirect, including, but without limiting the generality of the foregoing, indebtedness, obligations or liabilities to the Bank of the Borrower as a member of any partnership, syndicate, association or other group, and whether incurred by the Borrower as principal, surety, endorser, guarantor, accommodation party or otherwise. This Note and all of the aforementioned obligations and Liabilities are also secured by (a) any and all property of the Borrower and/or any Guarantor and/or any other party obligated on this Note, now or hereafter subject to a security agreement, mortgage, pledge agreement, assignment, hypothecation or other document granting the Bank or an Affiliate a security interest or other lien or encumbrance and (b) any and all collateral described in any and all credit accommodations, notes, loan agreements, and any other agreements and documents, now or hereafter existing, creating, evidencing, guaranteeing, securing or relating to any or all of the Liabilities, together with all amendments, modifications, renewals, or extensions thereof.

       8.  <u>Definitions</u>. As used herein:

       (a) "Business Day" means a day other than a Saturday, Sunday or other day on which commercial banks in New York are required or permitted by law to remain closed.

       (b) "Guarantor" and "Guarantors" mean Chriker Realty LLC, Michael Mazzeo Datacom, Inc., Michael Mazzeo, and David J. Parker and any other party guaranteeing payment or otherwise obligated on this Note.

       (c) "Loan Documents" means each document, instrument or agreement executed pursuant hereto or in connection herewith, together with each other document, instrument or agreement made with or in favor of the Bank.

       (d) "Prime Rate" means the variable per annum rate of interest so designated from time to time by the Bank as its prime rate. The Prime Rate is a reference rate and does not necessarily represent the lowest or best rate being charged to any customer.

       9.  <u>Miscellaneous</u>.

       (a)    The Borrower agrees to pay on demand all of the Bank's costs and expenses, including reasonable counsel fees, in connection with collection of any sums due to the Bank and enforcement of its rights under this Note.



(b)     No modification or waiver of any provision of this Note shall be effective unless such modification or waiver shall be in writing and signed by a duly authorized officer of the Bank, and the same shall then be effective only for the period and on the conditions and for the specific instances specified in such writing. No failure or delay by the Bank in exercising any right, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any rights, power or privilege.

(c)     The Borrower hereby waives presentment, demand for payment, notice of protest, notice of dishonor, and any and all other notices or demands except as otherwise expressly provided for herein.

(d)     This Note shall be construed in accordance with and governed by the laws of the State of New York (excluding the laws applicable to conflicts or choice of law). The Borrower agrees that any suit for the enforcement of this Note or any of the other Loan Documents may be brought in the courts of the State of New York or any Federal court sitting therein and consents to the nonexclusive jurisdiction of such court and service of process in any such suit being made upon the Borrower by mail at the address set forth in the first paragraph of this Note. The Borrower hereby waives any objection that it may now or hereafter have to the venue of any such suit or any such court or that such suit is brought in an inconvenient forum.

(e)     The Bank may at any time pledge all or any portion of its rights under this Note and the loan documents executed in connection therewith (the "Loan Documents") to any of the twelve (12) Federal Reserve Banks organized under Section 4 of the Federal Reserve Act, 12 U.S.C. Section 341. No such pledge or enforcement thereof shall release the Bank from its obligations under any of such loan documents.

(f)     EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 6(f).

(g)     The Bank shall have the unrestricted right at any time and from time to time, and without the consent of or notice to the Borrower or any other party obligated on this Note, to grant to one or more banks or other financial institutions (each, a "Participant") participating interests in the Bank's obligation to lend hereunder and/or any or all of the Loans held by the Bank hereunder. In the event of any such grant by the



600003

0101

Bank of a participating interest to a Participant, whether or not upon notice to the Borrower, the Bank shall remain responsible for the performance of its obligations hereunder and the Borrower shall continue to deal solely and directly with the Bank in connection with the Bank's rights and obligations hereunder. The Bank may furnish any information concerning the Borrower in its possession from time to time to prospective assignees and Participants, provided that the Bank shall require any such prospective assignee or Participant to agree in writing to maintain the confidentiality of such information.

(h)     This Note shall be binding upon and inure to the benefit of the Borrower, the Bank, all future holders of this Note and their respective successors and assigns, except that the Borrower may not assign or transfer any of its rights under this Note without the prior written consent of the Bank. The term "Bank" as used herein shall be deemed to include the Bank and its successors, endorsees and assigns. The Bank shall have the unrestricted right at any time or from time to time, and without the Borrower's consent, to assign all or any portion of its rights and obligations hereunder to one or more banks or other financial institutions (each, an "Assignee"), and the Borrower agrees that it shall execute, or cause to be executed, such documents, including without limitation, amendments to this Note and to any other documents, instruments and agreements executed in connection herewith as the Bank shall deem necessary to effect the foregoing. In addition, at the request of the Bank and any such Assignee, the Borrower shall issue one or more new promissory notes, as applicable, to any such Assignee and, if the Bank has retained any of its rights and obligations hereunder following such assignment, to the Bank, which new promissory notes shall be issued in replacement of, but not in discharge of, the liability evidenced by the promissory note held by the Bank prior to such assignment and shall reflect the amount of Loan held by such Assignee and the Bank after giving effect to such assignment. Upon the execution and delivery of appropriate assignment documentation, amendments and any other documentation required by the Bank in connection with such assignment, and the payment by Assignee of the purchase price agreed to by the Bank, and such Assignee, such Assignee shall be a party to this Agreement and shall have all of the rights and obligations of the Bank hereunder (and under any and all other guaranties, documents, instruments and agreements executed in connection herewith) to the extent that such rights and obligations have been assigned by the Bank pursuant to the assignment documentation between the Bank and such Assignee, and the Bank shall be released from its obligations hereunder and thereunder to a corresponding extent.

(i)     This Note and the other Loan Documents are intended by the parties as the final, complete and exclusive statement of the transactions evidenced thereby. All prior or contemporaneous promises, agreements and understandings, whether oral or written, are deemed to be superceded by this Note and such other Loan Documents, and no party is relying on any promise, agreement or understanding not set forth in this Note or such other Loan Documents. Neither this Note nor any of such other Loan Documents may be amended or modified except by a written instrument describing such amendment or modification executed by the Borrower and the Bank.


600003

Michael Mazzeo Electric Corp.

By: _____

Name: Michael Mazzeo
Title: C.E.O./ Chairman of the Board



600003

0101

# ADVISED LINE OF CREDIT NOTE

$1,500,000.00                                            December 8, 2010

         FOR VALUE RECEIVED and intending to be legally bound, the undersigned, MICHAEL MAZZEO ELECTRIC CORPORATION, a New York Corporation with offices at 41-24 24th Street, Long Island City, New York 11101 ("Borrower"), promises to pay, in lawful money of the United States of America, to the order of SIGNATURE BANK, a New York Corporation with offices at 565 Fifth Avenue, New York, NY 10017, the maximum aggregate principal sum of up to One Million Five Hundred Thousand and 00/00 Dollars ($1,500,000.00) or such lesser sum which represents the principal balance outstanding hereunder. The actual amount due and owing from time to time hereunder shall be evidenced by Lender's records of receipts and disbursements with respect to the Revolving Credit (as defined below), which shall, in the absence of manifest error, be conclusive evidence of the amount.

         This Note is issued pursuant to that certain Forbearance Agreement (the "Forbearance Agreement") entered into concurrently herewith by and among Borrower, Chriker Realty LLC, Michael Mazzeo, David J. Parker, James Vinci, Sr., Michael A. Joyce, Michael Mazzeo Datacom, Inc. and Lender. All capitalized terms used herein without further definition shall have the respective meanings ascribed thereto in the Forbearance Agreement.

         Borrower further agrees to make interest only payments on the outstanding principal balance hereunder on a monthly basis commencing on the first day of the first month following any Advance (as defined below) hereunder at a floating rate equal to the Wall Street Journal "Prime Rate" plus Two Hundred (200) basis points. Interest shall be calculated on the basis of a year of 360 days but charged for the actual number of days elapsed, and shall be due and payable as set forth herein.

         Borrower agrees that if it fails to timely make any payment due under this Note or upon the happening of any default under the Forbearance Agreement, the Forbearance Termination Date occurs or there is a default under any of the Loan Documents (as defined in the Forbearance Agreement), the unpaid principal balance of this Advised Line of Credit Note along with all accrued and unpaid interest and unpaid expenses shall become, or may be declared, immediately due and payable. The obligations evidenced by this Advised Line of Credit Note are secured by all of the Collateral outlined in the Loan Documents and the Forbearance Agreement.

         This Advised Line Credit Note may be prepaid at any time prior to the Revolving Credit Maturity Date (as defined below).

1.     <u>Description of the Revolving Credit:</u>

         Subject to the terms and conditions set forth herein, Lender hereby establishes for Borrower a line of credit in an amount of up to $1,500,000.00 (the "Revolving Credit"), which shall include advances (the "**Advances**"), which may be made by Lender from time to time prior to October 31, 2011 ("**Revolving Credit Maturity Date**"), and which shall be made available by

crediting such proceeds to Borrower's operating account with Lender provided the following conditions are met:

       i.     Borrower shall submit a thirteen (13) week rolling cash flow budget (the "Budget"), annexed hereto as Exhibit "B", to Lender prior to the first Advance hereunder showing Borrower's (and inclusive of results for Michael Mazzeo Datacom, Inc.) projected sources and uses of cash flow for the period November 1, 2010 through January 31, 2011 for approval, which approval shall be in Lender's sole and absolute discretion. On or before the tenth (10th) day of each month until the Forbearance Termination Date, Borrower will update the Budget to reflect actual performance against the projected budget for the same period and extend the Budget to continue as a thirteen (13) week rolling cash flow budget. Only if: (a) actual results meet or exceed budget as of the date an advance under Exhibit "B" (as defined in (v) below) is requested and is due, and (b) no defaults hereunder, under the Forbearance Agreement or under any of the Loan Documents have occurred as of the date of an advance, is SIGNATURE obligated to make any of the Exhibit "B" advances.

       ii.     All Advances under his Note must be requested by 11:00 A.M., Eastern Time, on the date such Advance is to be made.

       iii.     All requests for an Advance are to be in writing pursuant to a Credit Advance Request (in the form attached hereto as Exhibit A) which request is to be executed by an authorized officer of Borrower. Such request may be sent by telecopy or facsimile transmission provided that Lender shall have the right to require that receipt of such request not be effective unless confirmed via telephone with Lender.

       iv.     Upon receiving and approving a request for an Advance in accordance with subparagraph (iii) above, and subject to the conditions set forth herein, Lender shall make the requested Advance available to Borrower as soon as is reasonably practicable thereafter.

       v.     Notwithstanding the foregoing, provided the cash capital contribution has been made as provided in paragraph 14(b) of the Forbearance Agreement and there are no defaults hereunder, under the Forbearance Agreement or under any of the Loan Documents, Lender hereby approves advances for the specific request purposes identified on Exhibit "B" hereto and on the dates indicated on Exhibit "B".

    2.     THE BORROWER ACKNOWLEDGES AND AGREES THAT THIS CREDIT FACILITY IS UNCOMMITTED AND REQUESTS FOR ADVANCES OR EXTENSIONS OF CREDIT HEREUNDER SHALL BE APPROVED IN THE DISCRETION OF LENDER, WHICH MAY REFUSE TO MAKE AN EXTENSION OF CREDIT AT ANY TIME WITHOUT PRIOR NOTICE TO THE BORROWER, AND THAT THE PERFORMANCE OR COMPLIANCE BY THE BORROWER OF THE AGREEMENTS CONTAINED IN THIS NOTE, OR IN ANY OTHER DOCUMENT OR AGREEMENT EVIDENCING OR SECURING SUCH ADVANCES OR EXTENSIONS OF CREDIT, SHALL NOT OBLIGATE LENDER TO MAKE AN ADVANCE OR PROVIDE AN EXTENSION OF CREDIT HEREUNDER EXCEPT THAT LENDER SHALL MAKE THE ADVANCES SCHEDULED

ON EXHIBIT "B" HERETO PROVIDED THE BORROWER COMPLIES WITH THE TERMS HEREOF AND OF THE FORBEARANCE AGREEMENT WITH RESPECT TO THIS CREDIT FACILITY.

3.    Consent to Jurisdiction:  Borrower and Lender each hereby irrevocably consent to the non-exclusive jurisdiction of the Courts of the State of New York or the United States District Court for the Southern District of New York in any and all actions and proceedings whether arising hereunder or under any other agreement or undertaking.  Borrower waives any objection which Borrower may have based upon lack of personal jurisdiction, improper venue or forum non conveniens.  Borrower irrevocably agrees to service of process by certified mail, return receipt requested to the address of the appropriate party set forth herein.

4.    Waiver of Jury Trial: BORROWER (AND LENDER BY ITS ACCEPTANCE HEREOF) HEREBY WAIVES ANY AND ALL RIGHTS IT MAY HAVE TO A JURY TRIAL IN CONNECTION WITH ANY LITIGATION, PROCEEDING OR COUNTERCLAIM ARISING WITH RESPECT TO RIGHTS AND OBLIGATIONS OF THE PARTIES HERETO OR UNDER THE LOAN DOCUMENTS OR WITH RESPECT TO ANY CLAIMS ARISING OUT OF ANY DISCUSSIONS, NEGOTIATIONS OR COMMUNICATIONS INVOLVING OR RELATED TO ANY PROPOSED RENEWAL, EXTENSION, AMENDMENT, MODIFICATION, RESTRUCTURE, FORBEARANCE, WORKOUT, OR ENFORCEMENT OF THE TRANSACTIONS CONTEMPLATED HEREUNDER OR UNDER THE LOAN DOCUMENTS.

Borrower hereby waives protest, demand, notice of nonpayment and all other notices in connection with the delivery, acceptance, performance or enforcement of this Revolving Advised Line of Credit Note.

This Advised Line Credit Note shall be governed by and construed in accordance with the substantive laws of the State of New York.  The provisions of this Advised Line of Credit Note are to be deemed severable and the invalidity or unenforceability of any provision shall not affect or impair the remaining provisions of this Revolving Advised Line of Credit Note which shall continue in full force and effect.  No modification hereof shall be binding or enforceable against Lender unless approved in writing by Lender.

**[The Balance of this Page is Intentionally Left Blank]**

IN WITNESS WHEREOF, and intending to be legally bound hereby, Borrower has executed these presents the day and year first above written.

MICHAEL MAZZEO ELECTRIC
CORPORATION

BY: _____

Michael Mazzeo, ~~President~~
                        CEO

_____
Witness                10/14/2010