UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re: : Chapter 11

MICHAEL MAZZEO ELECTRIC : Case No. 11-14888 (MG)
CORPORATION.,

Debtor. :

---

In re: : Chapter 11

MICHAEL MAZZEO DATACOM INC., : Case No. 11-14889 (MG)

Debtor. :

**STIPULATION AND ORDER AUTHORIZING USE OF CASH COLLATERAL
PURSUANT TO 11 U.S.C. § 363(c) AND GRANTING OF ADEQUATE
PROTECTION PURSUANT TO 11 U.S.C. § 361**

This Stipulation and Order Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363(c) and Granting of Adequate Protection Pursuant to 11 U.S.C. § 361 (the "Stipulation and Order") is entered into as of the 25th day of October, 2011, by and between the above-captioned debtors, Michael Mazzeo Electric Corporation, ("MMEC") and Michael Mazzeo Datacom, Inc. ("MMD", and together with MMEC, the "Debtors", and each a "Debtor"), Signature Bank, in its capacity as a secured lender ("Lender"), and the Joint Industry Board of the Electrical Industry (the "Joint Board").

**BACKGROUND**

A. On October 21, 2011 (the "Petition Date"), the Debtors each filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their property as debtors in possession pursuant to Section 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in either

-1-

of the Debtors' cases (collectively the "Cases", individually the "Case". As of the date of this Motion, the United States Trustee has not yet appointed an official committee of unsecured creditors in these Cases. A full recitation of the factual background relating to these Cases may be found in the Rule 1007 affidavit of Michael Joyce, dated as of October 21, 2011[Docket No. 2].

B. Prior to the Petition Date, pursuant to the terms, conditions and limitations set forth in the documents identified in paragraph D below, Lender extended to MMEC various credit facilities, including a $4,000,000 secured line of credit (the "MMEC LOC Facility") and a $2,312,500 secured loan (the "MMEC Note Facility"). Additionally, on December 8, 2010, the Lender extended to MMEC an Advised Letter of Credit in the maximum amount of $1,500,000 (the "Advised LOC Note"). As of October 1, 2011, Lender asserted that MMEC owed Lender a balance of $3,960,323.39, inclusive of interest, on account of the MMEC LOC Facility, $376,025.74, inclusive of interest, on account of the MMEC Note Facility and $1,203,136.22 inclusive of interest, on account of the Advised LOC Note.

C. In addition, MMEC and MMD agreed to guaranty certain obligations owed by Chriker Realty, LLC ("Chriker") to Lender under a certain Amended Credit Grid Promissory Note in the original principal amount of $2,500,000 (the "Grid Note Facility", and together with the MMEC LOC Facility, the Advised LOC Note, and the MMEC Note Facility, the "Secured Prepetition Obligations"), delivered to Signature by Chriker dated September 26, 2009. As of October 1, 2011, Lender asserted that MMEC and MMD owed Lender a balance of $2,517,500, inclusive of interest, on account of the Grid Note Facility as a result of these guarantees.

D. The Secured Prepetition Obligations are evidenced by certain documents, including, (i) a certain Promissory Note in the original principal amount of $4,000,000 (the

"LOC Note") delivered to Signature by MMEC dated as of August 2, 2010; (ii) a certain Line Letter Renewal ("Line Letter Renewal"), among Signature, MMEC, Chriker Realty, LLC, Michael Mazzeo and David Parker, dated as of March 2, 2009; (iii) a certain Term Note in the original principal amount of $2,312,500 between Signature and MMEC, dated as of March 2, 2009, (the "Term Note"); (iv) the Advised LOC; (v) the Grid Note; (vi) certain Reaffirmation of Guaranties of Payment of MMEC and MMD, each dated as of September 26, 2009 (vii) a certain Amended Credit Grid Promissory Note in the original principal amount of $2,500,000; (viii) a certain Continuing Guaranty of MMD, dated as of March 4, 2009; (ix) a certain Continuing General Security Agreement, between MMEC and Lender, dated as of May 29, 2002; (x) a certain Forbearance Agreement, between MMEC, MMD, Chriker, Michael Mazzeo, David J. Parker, Michael A. Joyce, James Vinci, Sr. as obligors and Lender; (xi) a Pledge Agreement between MMEC and the Lender dated December 8, 2010; and (xii) properly filed UCC-1 financing statements (collectively, as amended, supplemented or otherwise modified prior to the Petition Date, the "Loan Documents").

E. To secure their respective Secured Prepetition Obligations to Lender, MMEC and MDD granted to Lender, for the ratable benefit of Lender, security interests in, and liens on (the "Prepetition Liens") all of their personal property and fixtures, in each case whether then or thereinafter existing or then owned or thereafter acquired and whether subject to the Uniform Commercial Code including, but not limited to, all goods, money, contract rights, instruments, accounts, farm products, inventory, equipment, documents, chattel paper, securities and general intangibles and all interest, dividends and other distributions paid and payable in cash or in property (including those arising out of MMEC's interest in MD Constructors, LLC); and all

replacements and substitutions for, and all accessions and additions to, and all products and proceeds of all of the foregoing (collectively, the "Prepetition Collateral").

F.  MMEC is a longstanding contractor with the International Brotherhood of Electrical Workers ("IBEW").  MMEC is signatory to both IBEW Local Number 3 (NYC) ("Local 3") and 25 (Long Island) ("Local 25").  The Joint Board administers all of the plans and benefits that are collectively bargained between Local of the IBEW and the Debtors.  As of the Petition Date, Local 3 had provided notice to its members that due to nonpayment by the Debtors during the prepetition period, certain benefits would no longer be provided to any members of Local 3 that continued to work on the Debtors' projects.  As a result of this notice, the Debtors' men were not engaged on the Debtors' projects as of the Petition Date.

G.  The Debtors, Lender and Joint Board (collectively, the "Parties") desire to enter into this Stipulation and Order to set forth their agreements and understandings and in order to seek the Court's authorization pursuant to Sections 361 and 363(c) of the Bankruptcy Code and Rules 4001(b) and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), for the Debtors, inter alia, to use the Cash Collateral (as defined below) and to provide adequate protection to Lender to the extent of any diminution in value of Lender's interests in the Prepetition Collateral resulting from the use of Cash Collateral, the use, sale or lease of the Prepetition Collateral (other than the Cash Collateral) and the imposition of the automatic stay pursuant to Bankruptcy Code § 362(a).

**NOW, THEREFORE**, with the foregoing Background deemed incorporated hereinafter, the Parties, intending to be legally bound hereby, promise and agree as follows:

1. MMEC stipulates and agrees that as of October 1, 2011, pursuant to the Loan Documents, it is indebted to Lender in respect of the Secured Prepetition Obligations, in the aggregate amount of $8,056,985.35, including accrued interest.

2. MMD stipulates and agrees that as of October 1, 2011, pursuant to the Loan Documents, it is indebted to Lender in respect of the Secured Prepetition Obligations, in the aggregate amount of $2,517,500 including accrued interest

3. The Debtors further stipulate and agree that the Secured Prepetition Obligations are secured by the respective Prepetition Liens granted by the Debtors to Lender upon and in the Prepetition Collateral and that such liens are valid unavoidable liens, properly perfected as of the Filing Date. All cash in the Debtors' possession or control as of the Petition Date and all cash coming into the Debtors' possession after the Petition Date constituting proceeds of the Prepetition Collateral is cash collateral of Lender within the meaning of Section 363(a) of the Bankruptcy Code ("Cash Collateral"). Lender is entitled, pursuant to Sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of its interest in the Prepetition Collateral for the use of Cash Collateral, the use, sale or lease of the Prepetition Collateral (other than the Cash Collateral), and the imposition of the automatic stay.

4. The Debtors do not have sufficient available sources of working capital and financing to operate their respective businesses in the ordinary course of business or maintain their respective property without the use of the Cash Collateral. The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, to pay their employees and otherwise finance their operations, is essential to the Debtors' continued viability and to maintain the value of their assets. In the absence of the use of Cash Collateral, the continued operation of

the Debtors' businesses would be in doubt, and serious and irreparable harm to the Debtors and their estates would occur.

5. The Debtors shall be entitled to use the Cash Collateral and use or sell the Prepetition Collateral in accordance with and subject to the terms and conditions of this Stipulation and Order and pursuant to the Budgets (as defined below) approved hereby. The proposed use of Cash Collateral shall be consistent with and for the purposes described in the Budget prepared by the Debtors and delivered to and approved by Lender (a copy of MMEC and MMD's budget is attached hereto as Schedules A and B respectively (the "Budgets")), or in the event the Debtors find it necessary to deviate from an approved Budget, then as approved by Lender upon prior written request.

6. Notwithstanding anything herein to the contrary, no Cash Collateral may be used by any Person (as defined in the Bankruptcy Code), to object to or contest in any manner, or raise any defenses to, the amount, validity, perfection, priority, extent, or enforceability of the Secured Prepetition Obligations, the Prepetition Liens, or the Replacement Liens (as defined below), or to assert any claims or cause of action against Lender.

7. As adequate protection for any diminution in the value of the Prepetition Collateral resulting from (i) the use of the Cash Collateral pursuant to Section 363(e) of the Bankruptcy, (ii) the use, sale or lease of the Prepetition Collateral (other than the Cash Collateral) pursuant to Section 363(c) of the Bankruptcy Code and (iii) the imposition of the automatic stay pursuant to Section 362(a) of the Bankruptcy Code, Lender shall be granted by the Court (effective as of the Petition Date and without the necessity of the execution by the Debtors of any other security agreement or pledge agreement), pursuant to Sections 361 and 363(e) of the Bankruptcy Code, to the same extent, priority and validity as the Prepetition Liens

existing with respect to the Prepetition Collateral as of the Petition Date, valid and perfected, replacement security interests in, and liens on (collectively, the "Replacement Liens"), all of the Debtors' right, title and interest in and to all of the Debtors' existing and after-acquired tangible and intangible personal property in existence on or acquired or created at any time after the Petition Date, inclusive of the type and kind previously identified as the Prepetition Collateral, (collectively, the "Postpetition Collateral"), junior only to the Carve-Out (as defined below); provided however, that the Postpetition Collateral shall not include the proceeds of any claims or causes of action of the Debtors or their estates that may later be commenced under chapter 5 of the Bankruptcy Code (the "Avoidance Actions").

8. Lender is hereby granted all of the protections afforded by Section 507(b) of the Bankruptcy Code, subject only to the Carve Out; provided however, that the Lender's rights under section 507(b) shall not extend to the proceeds of Avoidance Actions.

9. Notwithstanding the prior senior lien of the Lender in the Debtors' Postpetition Collateral, and in accordance with the Budgets annexed hereto, in order to facilitate the continued operations of the Debtors, MMEC shall transfer $100,000 to be held in escrow by counsel for the Joint Board immediately upon approval of this Interim Cash Collateral Order which shall be allocated solely to and for post-petition employee benefits in favor of the Local 3 (the "Joint Board Benefits Deposit"). The Joint Board Benefits Deposit shall be held in escrow by counsel for the Joint Board and shall only drawn upon in the event of (i) a default in payment of post-petition benefits due Local 3 by the Debtors; (ii) which draw must be equal to and is limited to the amount of any sums unpaid postpetiton; and (iii) only after advance written notice is received by the Debtors and their counsel and Lender's counsel of at least five (5) days ("Union Default Letter"). Receipt of a Union Default Letter, shall constitute a Default (as

defined in subparagraph 12 below), shall be the same as if a Default Letter had issued under subparagraph 12 of this Stipulation and Order, shall trigger the Cure period under that paragraph, and if it remains uncured shall result in termination of the use of Cash Collateral at the expiration of the Cure Period. The liens granted to the Lender shall attach to the Joint Board Benefits Deposit, subject only to the rights of the Joint Board provided in this paragraph.

10. Lender expressly agrees that the Prepetition Liens and any Replacement Liens shall be subject to a carve-out (the "Carve-Out") for (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest pursuant section 3717 of title 31 of the United States Code, (ii) the costs and administrative expenses not to exceed $15,000 in the aggregate that are permitted to be incurred by any chapter 7 trustee pursuant to an order of this Court following any conversion of any of the Cases pursuant to section 1112 of the Bankruptcy Code, and (iii) the payment of allowed professional fees and disbursements (the "Professional Fees and Disbursements") incurred by the professionals retained by the Debtors equal to any accrued and unpaid Professional Fees and Disbursements arising prior to November 18, 2011 not to exceed $50,000 (the "Interim Professional Carve-Out Cap"); provided that to the extent any professionals retained by the Debtors are paid on account of fees under the Budgets before November 18, 2011, any such payment amounts shall reduce dollar-for-dollar the amount available under the Interim Professional Carve-Out Cap.

11. The Replacement Liens granted pursuant to this Stipulation and Order shall constitute valid and duly perfected security interests and liens as of the Petition Date, and Lender shall not be required to file or serve financing statements, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any

action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtors to execute any other documentation relating to the Replacement Liens shall in no way affect the validity, perfection or priority of such Replacement Liens. If, however, Lender shall determine to file any such financing statements, notices of lien or similar instruments, or to otherwise confirm perfection of such Replacement Liens, the Debtors shall use reasonable best efforts to cooperate with and assist in such process. The stay imposed by Section 363(a) of the Bankruptcy Code is hereby modified, to the extent applicable, to allow for the filing and recording of a certified copy of this Stipulation and Order or any such financing statements, notices of lien or similar instruments, and all such documents shall be deemed to have been filed or recorded at the time of and on the date of the Petition Date.

12. As long as any portion of the Secured Prepetition Obligations remains unpaid, it shall constitute an event of default under this Stipulation and Order (each a "Default") if a Debtor fails to comply with any of the terms or conditions contained within this Stipulation and Order or any of the covenants or conditions (for which the Debtor was not in violation as of the Petition Date) contained in the Loan Documents; provided however, that except for the default identified in paragraph 3, page 2 of the default letter sent by Lender dated October 19 2011 (the "Default Letter") any other default identified in the Default Letter will not be considered to be a default here under.

13. In lieu of any other notice in the Loan Documents, the Debtor shall have the right to cure a Default within ten (10) days of the occurrence of such Default (the "Cure Period"). If such Default has not been cured before the expiration of the Cure Period, then Lender may exercise its rights and remedies and take all or any of the following actions against the defaulting Debtor without further modification of the automatic stay pursuant to Section 362 of the

Bankruptcy Code (which is hereby deemed modified and vacated to the extent necessary to permit such exercise of rights and remedies and the taking of such actions) or further order of, or application to, the Court: (a) terminate the use of Cash Collateral; (b) declare the principal of and accrued interest, fees and other liabilities constituting the Secured Prepetition Obligations to be due and payable; and (c) exercise any other right or remedy permitted under the Loan Documents, this Stipulation and Order, any applicable court order or by operation of law against any remaining Postpetition Collateral (including any remaining Cash Collateral); *provided, however*, Lender may take the actions described in clause 11(a) through (c) above only after the seventh (7th) day (the "Termination Date") following the date of receipt by counsel to the defaulting Debtor(s), the United States Trustee and any statutory committee(s) appointed in the Cases (or if no committee is appointed the top twenty unsecured creditors in each Case), of prior written notice of Lender's intent to take such actions, *provided* that no order prohibiting such actions is entered by the Court on or prior to the Termination Date.

14. The Debtors shall perform all acts, and execute and comply with the terms of such other documents, instruments and agreements in addition to this Stipulation and Order, as Lender may reasonably require, as evidence of and for the protection of the Secured Prepetition Obligations, or which Lender otherwise deems reasonably necessary to effectuate the terms and conditions of this Stipulation and Order.

15. The Replacement Liens granted pursuant to the provisions of this Stipulation and Order and any actions taken by Lender pursuant hereto shall survive entry of any order which may be entered (a) converting the Case to a chapter 7 case or (b) dismissing the Case, and such Replacement Liens shall maintain their priority as provided by this Stipulation and Order until all of the Secured Prepetition Obligations are indefeasibly paid in full.

16. To the extent that as of the Petition Date, there existed any validly existing, properly perfected and enforceable lien on any of the Prepetition Collateral which is senior in priority to the security interest of Lender, nothing contained herein is intended to impair or modify such priority.

17. The terms of this Stipulation and Order shall be binding upon all parties in interest, including, without limitation, the Debtors and any statutory committee appointed in the these Cases, provided however, that any statutory committee appointed in these Cases may investigate and if it deems appropriate, commence an adversary proceeding pursuant to Bankruptcy Rule 7001 or contested matter as required by the Bankruptcy Code and Bankruptcy Rules (an "Adversary Proceeding") challenging the amount, validity, enforceability, perfection or priority of the Secured Prepetition Obligations or the Prepetition Liens on or related to the Prepetition Collateral in respect thereof, or otherwise asserting any claims or causes of action against Lender on behalf of the respective Debtor's estates, no later than the date that is the later of (i) sixty (60)days from the entry of an order approving a final order approving use of Cash Collateral or (ii) sixty (60) days after the date of the initial appointment of the statutory committee of unsecured creditors, and (b) a final non-appealable order is entered in favor of the plaintiff in any such timely filed Adversary Proceeding that has been determined by the Court to have been properly filed under the Bankruptcy Code and the Bankruptcy Rules. In the event no statutory committee is appointed in the Debtors' Cases, any creditor of the Debtors' estates shall have the right to challenge the Lenders' claims subject to the time limitations set forth in this paragraph.

18. Despite the initiation of any such Adversary Proceeding, the Secured Prepetition Obligations and the Prepetition Liens on or related to the Prepetition Collateral shall be

presumed valid and entitled to the benefit of the terms of this Stipulation and Order pending the entry of a final non-appealable judgment and order otherwise modifying Lender rights with respect to the Secured Prepetition Obligations and the Prepetition Liens on or related to the Prepetition Collateral. If no such Adversary Proceeding is timely commenced as provided in the foregoing paragraph, (i) the Secured Prepetition Obligations shall constitute allowed claims, not subject to subordination and otherwise unavoidable, for all purposes in the Case and any subsequent chapter 7 case, (ii) the Prepetition Liens on or related to the Prepetition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, claim, counterclaim, re-characterization, offset of any kind, subordination, and otherwise unavoidable, and (iii) Lender, the Secured Prepetition Obligations and the Prepetition Liens shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' respective estates against Lender shall be forever waived and released.

19. Entry of an order approving this Stipulation and Order shall be without prejudice to any and all rights, remedies, claims and causes of action which Lender may have against the Debtors or third parties, nor shall it constitute a stay of Lender's non-bankruptcy rights against third parties. This Stipulation and Order is without prejudice to the right of Lender to seek relief, subject to the terms and conditions hereof, from the automatic stay in effect pursuant to Section 362 of the Bankruptcy Code, or any other relief in the Case, and the right of the Debtors to oppose any such relief. The provisions of this Stipulation and Order shall be binding upon and inure to the benefit of Lender, the Debtors, and its respective successors and assigns, including any trustee or other fiduciary hereafter appointed in these Cases as a legal representative of the Debtors or their estates.

20. Subject to the notice requirements provided for under this Interim Cash Collateral Order, if it shall be necessary for Lender at any time, to exercise any of its rights and remedies hereunder, under the Loan Documents, or under applicable law in order to effect repayment of the Secured Prepetition Obligations, to receive any amounts or remittances owing hereunder or for Lender, including, without limitation, foreclosing upon and selling all or a portion of the Postpetition Collateral, Lender shall have the right without any further action or approval of the Court to exercise such rights and remedies available to them under applicable law as to all or such part of the Postpetition Collateral as Lender shall, in its sole discretion, elect. All rights and remedies of Lender shall be cumulative and not alternative. Lender shall be entitled to apply the payments or proceeds of the Postpetition Collateral in accordance with the provisions of this Stipulation and Order and the Loan Agreement, and in no event shall Lender be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Postpetition Collateral or otherwise.

21. The automatic stay under Section 362 (a) of the Bankruptcy Code shall be, and it hereby is, modified to the extent necessary to permit Lender to receive, collect and apply payments and proceeds in respect of the Postpetition Collateral in accordance with, and to otherwise implement and comply with, the terms and provisions of this Stipulation and Order and the Loan Documents.

22. Interest on the Secured Prepetition Obligations shall accrue and be paid, on the first day of every month, from the Petition Date at a rate provided for in the Loan Documents. Lender reserves its right to demand payment of accrued interest on the date of liquidation of Debtors' assets or upon entry of a Confirmation Order approving a plan of reorganization for the Debtors and the Debtors reserve their right to contest the entitlement of Lender for payment of

interest due after the period covered by this Stipulation and Order, based on the value of the Prepetition Collateral.

23. The Debtors acknowledge that Lender will not be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Prepetition Collateral, provided however, that the Debtors' waiver and release as set forth herein shall not limit or affect in any way the right of a statutory committee or Trustee to make such argument or claim as if there had been no release or waiver by the Debtors.

24. Except as expressly provided in this Order or the Loan Documents, the claims, rights and liens of Lender granted by the provisions of this Order shall survive, and shall not be modified, impaired or discharged by (a) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, or terminating the joint administration (once granted) of the Cases, or (b) the entry of an order confirming a plan of reorganization in any of the Cases. The terms and provisions of this Order shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superseding Chapter 7 cases under the Bankruptcy Code and the claims, liens and rights of Lender granted by the provisions of this Order shall continue in full force and effect until the obligations owed to Lender are paid in full.

25. Except as otherwise provided in the Loan Documents, so long as any Prepetition Obligation, shall remain outstanding, (i) the Debtors shall not, directly or indirectly, create, incur, assume or permit to exist any security interest, encumbrance, lien or other security arrangement of any kind, on or with respect to any of their assets, or take or fail to take any action which would grant or create a lien or security interest in favor of any person in such assets, and (ii) there shall not be entered in the Case or any subsequent chapter 7 case any further order which authorizes, under any section of the Bankruptcy Code, including Sections 105 and

363 of the Bankruptcy Code, the procurement of credit or the incurring of indebtedness secured by a lien which is entitled to super priority administrative claim status which is equal to or superior to that granted to Lender herein (except with respect to a lien on the Prepetition Collateral which is senior to the security interests of Lender, if any, as of the Petition Date), unless in each instance (x) Lender shall have given its prior written consent thereto (and no such consent shall ever be implied from any other action, inaction or acquiescence by Lender) or (y) such other order requires that the Secured Prepetition Obligations be indefeasibly paid in full in cash and discharged contemporaneously with the entry of such order.

26. Notwithstanding anything contained herein to the contrary, the entry of this Stipulation and Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (a) any of the Lender's rights under the Bankruptcy Code or under non-bankruptcy law, including without limitation the right of Lender to (i) request modification of the automatic stay pursuant to Section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to cases under Chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a chapter 11 plan or plans or (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of Lender including all rights and remedies against all guarantors. For the avoidance of doubt and in connection with the instant Stipulation and Order only, the Lender is agreeing to forego a request for post-petition liens on Avoidance Actions and/or a waiver of the Debtors' rights under Section 506(c) of the Bankruptcy Code; provided that the Lender hereby expressly reserves its rights to seek a lien upon Avoidance Actions and/or secure a waiver of the Debtor's rights under Section

506(c) of the Bankruptcy Code as a condition to use of Cash Collateral in connection with any future order entered in connection with these Cases.

27. Failure of the Lender to seek relief or otherwise exercise its rights and remedies under the Loan Documents, the Forbearance Agreement, or this Order shall not constitute a waiver of any of its rights hereunder, thereunder or otherwise.

28. Lender shall be deemed to be a party-in-interest for all purposes in these Chapter 11 Cases with the right and opportunity to appear and be heard on all matters arising in the Chapter 11 Cases including, without limitation: (a) employment and payment of professionals by the Debtors' estates; (b) the sale of any estate property; (c) any plan or reorganization proposed in these Cases; and (d) any proposed conversion or dismissal of these Cases.

29. In the event that an order dismissing these Cases is entered under Section 1112 of the Bankruptcy Code or otherwise, the terms and provisions of this Stipulation and Order shall survive and this Court shall retain jurisdiction, notwithstanding any such dismissal for purposes of enforcing the same.

30. The Debtors are authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of additional security agreement and financing statements) and to pay fees and expenses which may be required or necessary for the Debtors' performance under the Loan Documents.

31. The Debtors will provide to the Lender all of the financial and collateral reports currently identified in the Forbearance Agreement. In addition, the Debtors shall provide to the Lender, at its request, any other financial documentation that it is obligated to provide under the Loan Documents or in accordance with the Bankruptcy Code or otherwise applicable statutory provisions and/or local or administrative reporting obligations in connection with the Case.

32. To the extent of any inconsistency between the terms of this Stipulation and Order and the Loan Documents, the terms and provisions of this Stipulation and Order shall govern.

33. The Debtors' authority to use Cash Collateral pursuant to this Stipulation and Order will terminate on November 18, 2011, which date may be extended with the written consent of Lender and subject to the entry of a corresponding order of this Court.

34. Any notices in connection herewith may be transmitted by personal delivery, overnight courier or email with first class mail:

        If to the Debtors:    Michael Mazzeo Electric Corporation
                                      Michael Mazzeo Datacom, Inc.
                                      41-24 24th Street
                                      Long Island City, New York 11101
                                      Attn: David Parker and Michael Joyce

        with a copy to:      Klestadt & Winters, LLP
                                      570 Seventh Avenue, 17th Floor
                                      New York, New York 10018
                                      Attn: Sean Southard and Fred Stevens

        If to Lender:          Signature Bank
                                      565 Fifth Ave.
                                      New York, New York 10017
                                      Attn: Salvatore Trifiletti

        with a copy to:      Moritt Hock & Hamroff, LLP
                                        400 Garden City Plaza
                                      Garden City, New York 11530
                                      Attn: Marc L. Hamroff
                                            Leslie A. Berkoff

Notices shall be effective (a) immediately upon personal delivery, (b) one day after deposit with an overnight courier, or (c) upon receipt of email (so long as notice by first class mail is deposited with the United States Postal Service on the same day as the email is sent).

35. This Stipulation and Order may be executed in any number of separate counterparts, any of which may be transmitted by facsimile or email, and each of which when so

executed and delivered shall be an original, but all of which shall together constitute, one and the same agreement.

36. All headings used in the Stipulation and Order are for reference purposes only and do not comprise part of the terms hereof.

37. No failure of Lender to enforce any right granted under this Stipulation, any of the Loan Documents or otherwise shall represent a waiver of such right.

38. Except as expressly set forth herein, nothing in this Stipulation and Order constitutes a modification, alteration or amendment to the Debtors' obligations to Lender under the Loan Documents.

39. Sufficient notice of the hearing and entry of this Stipulation and Order has been given, and such notice shall be and hereby is adjudicated sufficient to provide due process to, and to bind, any other party asserting any lien or other interest of any kind (including setoff, or any other charges or adverse claim) in any of the Prepetition Collateral.

40. This Court has and will retain jurisdiction to enforce this Order according to its terms.

41. Upon approve and entry of this Order, Debtors' counsel shall serve notice of entry of this Order, together with a copy of this Order, by first class mail prepaid upon: (i) the top twenty creditors in each of the Cases (or their counsel in these Cases if known); (iii) any parties who are known to have, or profess to have, liens on any of the Prepetition or Postpetition Collateral; and (iii) all other parties requesting notice pursuant to Bankruptcy Rule 2002

42. The parties hereto agree to execute any and all documents that are reasonably necessary to implement the terms and provisions of this Stipulation and Order.

43. No modification or amendment of any of the provisions hereof shall be effective unless set forth in writing and signed by the parties hereto and approved by the Court.

44. **IN WITNESS WHEREOF**, the parties have executed this Stipulation and Order, intending to be legally bound, as of the date first above written.

MICHAEL MAZZEO ELECTRIC
CORP., Debtor and Debtor in Possession

By: */s/ David Parker*
   Name: David Parker
   Title: CEO & President

MICHAEL MAZZEO DATACOM
INC., Debtor and Debtor in Possession

By: */s/ David Parker*
   Name: David Parker
   Title: Director

MORITT HOCK & HAMROFF, LLP

By: */s/ Marc L. Hamroff*
   Marc L. Hamroff, Esq.
400 Garden City Plaza
Garden City, New York 11530
(516) 873-2000

*Attorneys for Signature Bank*

COHEN, WEISS AND SIMON LLP

By: */s/ David R. Hock*
   David R. Hock, Esq.
330 West 42nd Street, 25th Floor
New York, New York 10018
(212) 563-4100

*Counsel for the Joint Industry Board of the Electrical Industry*

**SO ORDERED THIS 25th DAY OF OCTOBER, 2011**

                          **/s/Martin Glenn**
                          MARTIN GLENN
                    United States Bankruptcy Judge